**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STUDENTS FOR JUSTICE IN PALESTINE AT UT DALLAS, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 3:26-cv-1596-K** |
| **v.** | § | |
| | § | |
| **ERIC WILLADSEN, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

TODD A. DICKERSON
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24118368
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 228-7289 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov

**Counsel for Defendants**

## TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... iii

Summary Of The Argument ..... 1

Issues Presented And Standards Of Review ..... 3

Nature And Stage Of The Proceeding ..... 4

I. Elseisy, Zhou, And SJPUTD Disrupted UTD's Commencement Ceremony. ..... 4

II. Abusaad, Najjar, And Choi Violated Their Bond Conditions. ..... 8

III. An Overview Of Plaintiffs' Claims ..... 9

Argument ..... 9

I. This Court Lacks Jurisdiction Over Parts Of Plaintiffs' Claims. ..... 9

A. Sovereign Immunity Bars Plaintiffs' Texas Constitutional Claims. ..... 9

B. Sovereign Immunity Bars Plaintiffs' Equitable Relief Claims; These Claims Also Fail On Standing Grounds. ..... 10

II. Plaintiffs' Claims Fail On The Merits. ..... 11

A. An Overview Of The Qualified Immunity Doctrine. ..... 11

B. Plaintiffs Did Not Plead Key Elements Of Their Malicious Prosecution Claims, And The Existence Of Valid Arrest Warrants Defeats Their Claims. ..... 12

1. Analysis For The May 1, 2024 Arrests Of Abusaad, Najjar, And Choi. ..... 13

2. Analysis For Abusaad's, Najjar's, And Choi's Violations Of Their Bond Conditions. ..... 14

3. Analysis For The Arrests Of Elseisy And Zhou. ..... 17

C. Plaintiffs Did Not Allege Viable First Amendment Retaliation Claims. ..... 23

1. Analysis For Elseisy, Zhou, and SJPUTD. ..... 23

2. Analysis For Abusaad, Najjar, And Choi. ..... 33

D. Zhou Did Not Allege A Clearly Established Violation Of His Right To Be Free From Excessive Force. ..... 35

Conclusion ........................................................ 37
Certificate of Meet-And-Confer ........................................................ 38
Certificate of Service ........................................................ 38

## TABLE OF AUTHORITIES

**Cases**

*Alford v. Deffendoll*,
165 F.4th 490 (6th Cir. 2026) .................................................. 32, 35

*Armstrong v. Ashley*,
60 F.4th 262 (5th Cir. 2023) .................................................. 14, 18, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................. 4

*Bell v. Itawamba Cnty. Sch. Bd.*,
799 F.3d 379 (5th Cir. 2015) .................................................. 24

*Brinsdon v. McAllen Indep. Sch. Dist.*,
863 F.3d 338 (5th Cir. 2017) .................................................. 24

*Brown v. Callahan*,
623 F.3d 249 (5th Cir. 2010) .................................................. 11, 12

*Brown v. U.S. Postal Serv.*,
338 Fed. Appx. 438 (5th Cir. 2009) .................................................. 16

*Burwell v. Hee*,
No. 2:21-CV-01901-RFB-EJY, 2026 WL 381882 (D. Nev. Feb. 10, 2026) ............ 15

*Chapdelaine v. Desjardin*,
180 F.4th 454 (2d Cir. 2026) .................................................. 21

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) .................................................. 12

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .................................................. 6, 8

*Corn v. Mississippi Dep't of Pub. Safety*,
954 F.3d 268 (5th Cir. 2020) .................................................. 11

*Davis v. Angelina Coll. Bd. of Trustees*,
No. 9:17-CV-00179, 2018 WL 10111001 (E.D. Tex. June 1, 2018) .................. 24

*Davis v. State*,
No. 06-23-00170-CR, 2024 WL 413479 (Tex. App.—Texarkana Feb. 5, 2024, no pet.) .................................................. 19

*Doe v. Mckesson*,
71 F.4th 278 (5th Cir. 2023) .................................................. 28, 33

*Freedom From Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020) .......... 11

*Gautreaux v. Masters*,
No. 1:21-CV-01166-LY, 2022 WL 3723298 (W.D. Tex. Aug. 29, 2022) .......... 10

*Hansen v. Westerville City Sch. Dist. Bd. of Educ.*,
43 F.3d 1472 (6th Cir. 1994) .......... 29

*Haygood v. Morrison*,
116 F.4th 439 (5th Cir. 2024) .......... 13

*Healy v. James*,
408 U.S. 169 (1972) .......... 25

*Heck v. Humphrey*,
512 U.S. 477 (1994) .......... 18, 19, 20, 21, 22, 24, 32, 33

*Heilrayne v. Univ. of Tex. At Austin*,
No. 1:25-CV-640-DAE, 2026 WL 630966 (W.D. Tex. Jan. 27, 2026) .......... 26

*Jackson v. Burkett*,
No. 6:18CV323, 2018 WL 5019403 (E.D. Tex. Aug. 1, 2018) .......... 32

*Jenkins v. Louisiana State Board of Education*,
506 F.2d 992 (5th Cir. 1975) .......... 26

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) .......... 23, 25, 31

*Kelson v. Clark*,
1 F.4th 411 (5th Cir. 2021) .......... 14, 18

*Kerns v. Dickson*,
No. 25-40349, 2026 WL 396358 (5th Cir. Feb. 12, 2026) .......... 13, 14

*Khanna v. City & Cnty. of San Francisco*,
No. 25-CV-06965-JCS, 2026 WL 1537047 (N.D. Cal. June 1, 2026) .......... 15

*Landrum v. Dowies*,
No. CV 23-340-P, 2024 WL 1068667 (W.D. La. Feb. 21, 2024) .......... 21

*Laufer v. Mann Hosp., L.L.C.*,
996 F.3d 269 (5th Cir. 2021) .......... 4

*Launza v. City of Mesquite*,
No. 3:20-CV-01710-E (BT), 2021 WL 4954348 (N.D. Tex. Oct. 8, 2021) .......... 33

*Lee v. State*,
560 S.W.3d 768 (Tex. App.—Eastland 2018, pet. ref'd) .......... 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................... 11

*Mesa v. Prejean*,
543 F.3d 264 (5th Cir. 2008)...........................................................................31, 35

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) .........................................................................10, 11

*Moore v. Brown*,
868 F.3d 398 (5th Cir. 2017)................................................................................ 29

*Morris v. Mekdessie*,
768 Fed. Appx. 299 (5th Cir. 2019) ..................................................................... 19

*Mullenix v. Luna*,
577 U.S. 7 (2015)................................................................................................ 12

*Murthy v. Missouri*,
603 U.S. 43 (2024)............................................................................................... 11

*Navratil v. City of Racine*,
101 F.4th 511 (7th Cir. 2024) .........................................................................28, 30

*Nieves v. Bartlett*,
587 U.S. 391 (2019).................................................................2, 23, 26, 27, 28, 33

*NiGen Biotech, L.L.C. v. Paxton*,
804 F.3d 389 (5th Cir. 2015)................................................................................ 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)............................................................................................... 10

*Perez v. Hume*,
No. 14-CV-6349-FPG, 2017 WL 953204 (W.D.N.Y. Mar. 10, 2017) ...................... 32

*PeTA, People for the Ethical Treatment of Animals v. Rasmussen*,
298 F.3d 1198 (10th Cir. 2002) ............................................................................ 29

*Phillips v. City of Baytown*,
No. 4:22-CV-2197, 2023 WL 4163062 (S.D. Tex. Mar. 3, 2023).............................. 33

*Prosper v. City of Houston*,
No. 4:23-CV-02603, 2024 WL 1184175 (S.D. Tex. Feb. 13, 2024).....................21, 32

*Ray v. Recovery Healthcare Corp.*,
No. 22-10303, 2022 WL 16945898 (5th Cir. Nov. 15, 2022) .................................... 19

*Richardson v. Tex.*,
No. 23-40526, 2024 WL 913380 (5th Cir. Mar. 4, 2024) .......................................... 10

*Santander v. Salazar*,
133 F.4th 471 (5th Cir. 2025) ....................12, 15, 23

*Sessanga v. City of DeSoto*,
No. 24-11050, 2025 WL 2848715 (5th Cir. Oct. 8, 2025) .................... 16

*Shearer v. Bowen*,
216 F.3d 1080 (5th Cir. 2000).................... 15

*Siders v. City of Brandon, Mississippi*,
123 F.4th 293 (5th Cir. 2024) .................... 29

*Smith v. Kendall*,
No. 23-50713, 2024 WL 4442040 (5th Cir. Oct. 8, 2024) .................... 34

*Taylor v. Doe*,
No. MO:20-CV-00124-DC, 2022 WL 19561802 (W.D. Tex. May 31, 2022) ....28, 30

*Thomas v. Howze*,
348 Fed. Appx. 474 (11th Cir. 2009) .................... 29

*Thomas v. Sams*,
734 F.2d 185 (5th Cir. 1984)....................16, 17

*Thompson v. Steele*,
709 F.2d 381 (5th Cir. 1983).................... 13

*Tinker v. Des Moines Indep. Comm. Sch. Dist.*,
393 U.S. 503 (1969)....................2, 4, 23, 24, 25, 26

*Trevino v. Iden*,
79 F.4th 524 (5th Cir. 2023) .................... 17

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
816 Fed. Appx. 892 (5th Cir. 2020) ....................30, 34

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989).................... 30

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
774 Fed. Appx. 959 (6th Cir. 2019) ....................28, 30

*Williams v. City of Cleveland, Miss.*,
736 F.3d 684 (5th Cir. 2013).................... 35

*Zorn v. Linton*,
146 S. Ct. 926 (2026) ....................35, 36, 37

**<u>Statutes</u>**

42 U.S.C. § 1983 ....................2, 3, 9, 12, 13, 20, 21, 32, 33

Tex. Penal Code § 22.01(b)(1) .......... 7
Tex. Penal Code § 42.05 .......... 5, 7, 17

**Other Authorities**

*UTDSP5003*, THE UNIV. OF TEX. AT DALLAS .......... 5, 7, 8, 30

**Rules**

Fed. R. Civ. P 12(b)(1) .......... 4
Fed. R. Civ. P 12(b)(6) .......... 4, 34

## Summary Of The Argument

Plaintiffs consist of five current or former students at the University of Texas at Dallas ("UTD") and one UTD-based student group, the Students for Justice in Palestine at UT Dallas ("SJPUTD"). Three of the Plaintiffs—Belal Elseisy, Chengyang Zhou, and SJPUTD—conducted a pro-Palestinian protest that disrupted UTD's commencement ceremony. UTD disciplined Elseisy, Zhou, and SJPUTD over this incident. Elseisy and Zhou were also arrested for disrupting this official UTD event.

The remaining Plaintiffs' stories are slightly different. Nouran Abusaad, Casey Choi, and Mousa Najjar were arrested during a May 1, 2024 protest at UTD. Their bond conditions prevented them from being on UTD's campus except for attending class and class-related activities. Abusaad, Choi, and Najjar violated their bond conditions when they attended voluntary graduation ceremonies at UTD. Choi and Najjar were then arrested for criminal trespass, and Abusaad received a trespass notice preventing her from returning to campus.

Plaintiffs sued various UTD officials over the events above, asserting claims of malicious prosecution, First Amendment retaliation, excessive force, and violations of the Texas Constitution's protections to speech and assembly. Their claims are fatally flawed and should be dismissed.

This Court lacks jurisdiction over parts of Plaintiffs' claims. It is well settled that Texas has not waived its sovereign immunity for state constitutional claims like Plaintiffs' when asserted in federal court. Also, Plaintiffs seek retrospective equitable

relief, which falls outside the bounds of the *Ex parte Young* exception to sovereign immunity. Further, Plaintiffs sued many Defendants with no remote connection to their injuries, as needed to establish *Ex parte Young* and Article III standing in this context.

Plaintiffs also did not allege plausible claims under 42 U.S.C. § 1983, and Defendants' qualified immunity bars their claim for damages. There are four main reasons why.

First, Plaintiffs did not plead key elements required for their malicious prosecution claims, such as legal causation by Defendants, the termination of an ongoing criminal proceeding in their favor, the absence of probable cause, and malice. Further, Plaintiffs admit they were arrested pursuant to arrest warrants, which effectively forecloses their malicious prosecution claims under the independent intermediary doctrine. Given these issues, Plaintiffs cannot overcome Defendants' qualified immunity.

Second, Plaintiffs did not allege a clearly established violation of their First Amendment rights. For instance, Plaintiffs Elseisy, Zhou, and SJPUTD engaged in materially disruptive conduct. Thus, their protests were not protected speech under *Tinker v. Des Moines Indep. Comm. Sch. Dist.* Also, Plaintiffs did not establish the absence of probable cause for their arrests, as *Nieves v. Bartlett* generally requires. Further, Plaintiffs' allegations confirm that UTD merely enforced a content-neutral policy against them, and there are no meaningful facts showing that Defendants acted with a retaliatory motive.

Third, Plaintiffs did not establish that each Defendant was personally involved in the alleged unconstitutional acts, which is an essential requirement in a § 1983 suit for damages. Notably, Plaintiffs did not allege facts detailing what each Defendant did or how they contributed to each of the alleged constitutional deprivations at issue.

Finally, qualified immunity forecloses Plaintiffs' § 1983 claims. The bar to overcome qualified immunity is high—the plaintiff usually must identify binding caselaw analyzing similar circumstances and finding them to be a violation of the plaintiff's constitutional rights. Plaintiffs will not be able to make this showing here for any of their § 1983 claims.

For these and other reasons discussed below, Plaintiffs' claims should be dismissed in their entirety.

## Issues Presented And Standards Of Review

1. **Sovereign Immunity (Texas Constitution Claims):** Plaintiffs assert claims under the Texas Constitution. But sovereign immunity generally bars such claims against state officers. Does sovereign immunity foreclose Plaintiffs' claims under the Texas Constitution?

2. **Sovereign Immunity And Standing (Equitable Relief Claims):** Under the *Ex parte Young* exception to sovereign immunity, a plaintiff must seek prospective, not retrospective, relief. And both this exception and Article III standing require a plaintiff to sue a proper "enforcement" official in this context. Yet Plaintiffs merely seek a declaration stating that Defendants violated their rights in the past. And they assert claims against many Defendants with no remote connection to the alleged unlawful acts. Are Plaintiffs' requests for equitable relief jurisdictionally barred?

3. **Malicious Prosecution:** Plaintiffs did not allege key facts underlying their malicious prosecution claims, such as Defendants' causal involvement, that the criminal proceedings terminated in their favor, that Defendants acted with malice, and so on. Did Plaintiffs plead plausible malicious prosecution claims?

And can Plaintiffs overcome Defendants' qualified immunity?

4. **First Amendment Retaliation:** Plaintiffs' First Amendment retaliation claims contain many problems. For instance, the Supreme Court's decision in *Tinker* allows UTD to restrict Plaintiffs' materially disruptive speech. Further, Plaintiffs did not plead and prove the absence of probable cause for their arrests. Also, Plaintiffs did not establish Defendants' retaliatory motive or personal involvement in the alleged unlawful acts. Should Plaintiffs' retaliation claims be dismissed on failure-to-plead and qualified immunity grounds?

5. **Excessive Force:** To overcome qualified immunity, there must usually be binding caselaw finding that the defendant violated the plaintiff's rights under similar circumstances. Here, Eric Willadsen briefly wrapped his arm around the neck of a protestor (Zhou) to remove a loud instrument he was playing shortly after he left an event he disrupted. Can Zhou identify caselaw analyzing similar facts and finding the officer's conduct to constitute excessive force?

The first two issues go to this Court's jurisdiction and thus are subject to a Rule 12(b)(1) motion to dismiss. "At the pleading stage, [the plaintiff's] burden is to allege a plausible set of facts establishing jurisdiction." *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021) (quotations omitted).

The remaining issues are analyzed under Rule 12(b)(6). A Rule 12 (b)(6) motion generally turns on whether the plaintiff pled a "plausible" (as opposed to just a "possible") claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## NATURE AND STAGE OF THE PROCEEDING

### I. Elseisy, Zhou, And SJPUTD Disrupted UTD's Commencement Ceremony.

**Belal Elseisy:** On May 16, 2025, Elseisy attended UTD's commencement ceremony. ECF 14, ¶ 95. "As UTD President Richard Benson began his speech, Elseisy stood up and yelled, 'President Benson! Your legacy is genocide. The students demand divestment!'" *Id.* at ¶ 96.

Other students joined Elseisy and began chanting loudly. *Id.* at ¶¶ 45, 97. UTD officials asked the protesters to leave and ultimately ushered them away from the commencement area. *Id.* at ¶ 45. During this process, several protesters assembled in a group and marched around campus while the chanting continued. *Id.* at ¶ 45. President Benson had to pause his speech for 28 seconds due to this protest. *Id.* at pg. 4.

UTD initiated disciplinary proceedings against Elseisy due to his conduct during the May 16th protest. *Id.* at ¶¶ 106, 109–10. UTD found that Elseisy disrupted the commencement ceremony and that his actions violated UTDSP5003 § C.9.6(14)(4) and (15). *Id.* at ¶ 129.[1] UTD suspended Elseisy from pursuing further education at a University of Texas System institution for two years due to these violations. *Id.* at ¶ 130; *see also id.* at ¶ 95 (explaining that Elseisy received his bachelor's degree from UTD in May 2025).

UTD officers also obtained a warrant for Elseisy's arrest for violating Tex. Penal Code § 42.05, which makes it an offense for a person to intentionally interfere with a lawful meeting, procession, or gathering. *Id.* at ¶¶ 115, 120; Tex. Penal Code § 42.05. Elseisy was arrested pursuant to this warrant. ECF 14, ¶¶ 120–21.

On February 19, 2026, Elseisy signed a pretrial agreement with the Dallas County

---

[1] UTDSP5003 § C.9.6.(14)(4) bars "[a]ny interference with or obstruction of any institutional program, activity, event, or facilities, including . . . leading, inciting or participating in activities to disrupt scheduled activities of the University." *UTDSP5003*, THE UNIV. OF TEX. AT DALLAS, https://policy.utdallas.edu/utdsp5003. UTDSP5003 § C.9.6(15) states that "[a]ny student who engages in conduct that violates the Regents' Rules and Regulations, University rules and regulations, specific instructions issued by an administrative official of the institution or the UT System acting in the course of their authorized duties, or federal, State, or local laws is subject to discipline." *Id.*

District Attorney's Office. *Id.* at ¶ 132. "The agreement required that he 'commit no offenses in violations of laws of the State of Texas' for 30 days, 'abstain from all illegal substances' and 'voluntarily, knowingly, and intelligently waive' his rights to a complete expunction of the records and files relating to his arrest." *Id.* On March 27, 2026, the presiding judge granted the District Attorney of Dallas County's request to dismiss the criminal case against Elseisy due to "his successful completion of the requirements outlined in the Pretrial Intervention Agreement." *Id.* at ¶ 134.

**Chengyang Zhou:** On May 16, 2025, Zhou attended UTD's commencement ceremony. *Id.* at ¶ 31. Zhou joined the students' protest of this event. *Id.* at ¶¶ 31–33. UTD initiated disciplinary proceedings against Zhou for his conduct during the May 16th protest. *Id.* at ¶¶ 45–47.

UTD held a disciplinary hearing for Zhou, Elseisy, and another student (Tariq Ramadan). *Id.* at ¶¶ 74, 78. At this hearing, Zhou did not dispute that he: (1) "was part of a group of people who were chanting" during the May 16th protest; (2) "moved toward the stage where Dr. Benson was in the middle of giving a commencement speech"; and (3) "participated in the march across the empty parking lot to The Plinth." Defendants' Appendix ("Appx."), 10.[2] UTD found that Zhou's conduct violated UTDSP5003 § C.9.6(15) and (18) and placed him on a one-year deferred suspension.

[2] Plaintiffs referenced this December 19, 2025 letter and made its disciplinary findings central to their amended complaint. *See* ECF 14, ¶¶ 85–88. Thus, this letter is properly before this Court. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

ECF 14, ¶¶ 85–87.[3] UTD ruled that Ramadan was not responsible for the disciplinary charges and imposed no sanctions against him. *Id.* at ¶ 86.

UTD officers also obtained a warrant for Zhou's arrest for disrupting the May 16th ceremony in violation of Tex. Penal Code § 42.05 and for felony assault of a public servant under Tex. Penal Code § 22.01(b)(1). *Id.* at ¶ 51. UTD officers arrested Zhou pursuant to this warrant. *Id.* at ¶¶ 51, 53–54. The felony assault charge was due to Zhou blowing a bugle a few feet away from a UTD officer (Willadsen), which the officer claimed caused him hearing loss and tinnitus. *Id.* at pg. 5.

Zhou admitted that he "blew into [a] bugle" after leaving the May 16th ceremony. *Id.* at ¶ 34. Zhou alleged that Willadsen then placed his forearm on Zhou's neck and applied a pressured chokehold, seemingly to remove the bugle from Zhou's hands. *See id.* at ¶ 35; *id.* at pg. 5. Zhou did not identify how long the so-called "chokehold" took place. That said, he strongly suggested that the restraint was brief and solely for the purpose of removing his bugle. Specifically, Zhou stated that Willadsen: (1) wrapped a forearm around his neck; (2) released him; and then (3) took away his bugle. *See id.* at ¶¶ 35–39; *id.* at pg. 5.[4] After this short interaction, Zhou was ordered to continue moving away from the commencement ceremony. *Id.* at ¶ 39.

**SJPUTD:** SJPUTD is a student organization at UTD that focuses on issues

[3] UTDSP5003 § C.9.6(18) prohibits a student from "[f]ailing to comply with a verbal or written request or instruction of an official of the University or the UT System acting in the course of their duties." *See UTDSP5003*, *supra* note 1.

[4] A video of this incident confirms that Willadsen placed his arms around Zhou's upper chest for about a second while he took away Zhou's bugle. Appx., 2

concerning the history of Palestine and its people. *Id.* at ¶ 135. UTD commenced disciplinary proceedings against this group due to its suspected involvement in the May 16th protest. *Id.* at ¶¶ 138–39. UTD found that SJPUTD or its members (such as Elseisy), incited, led, or participated in this disruptive incident. Appx. 20–21.[5] Thus, UTD determined that SJPUTD violated UTDSP5003 § C.9.6(14)(4) and (15) and suspended this group for one year. ECF 14, ¶ 152.

## II. Abusaad, Najjar, And Choi Violated Their Bond Conditions.

On May 1, 2024, Nouran Abusaad, Mousa Najjar, and Casey Choi were arrested, seemingly due to their conduct during a protest at UTD that same day. *See id.* at ¶¶ 199–200, 209–11, 231. They were released on personal recognizance bonds. *Id.* at ¶¶ 201, 212, 232.

Abusaad's, Najjar's, and Choi's bond conditions prevented them from being present on campus except for attending class and class-related activities. *Id.* at ¶¶ 201, 212, 232. UTD interpreted the bond conditions to mean that Abusaad, Najjar, and Choi could not attend graduation and similar activities as such events "are voluntary and not related to any class." *Id.* at ¶ 220.

On May 15, 2024, Choi and Najjar attended their graduation ceremonies. *Id.* at ¶¶ 213, 234. UTD found that this violated their bond conditions, obtained arrest warrants for criminal trespass, and arrested them. *Id.* at ¶¶ 218–21, 237–38.

[5] Plaintiffs referenced this February 6, 2026 letter and made its disciplinary findings central to their amended complaint. *See, e.g.*, ECF 14, ¶ 152. Thus, this letter is properly before this Court. *See Collins*, 224 F.3d at 498–99.

Abusaad attended her graduation ceremony on May 19, 2025. *Id.* at ¶ 202. UTD found that this violated Abusaad's bond conditions. *Id.* at ¶¶ 205, 220. UTD issued Abusaad a trespass notice and told her that she could not come back to campus. *Id.* at ¶ 206.

## III. An Overview Of Plaintiffs' Claims.

Plaintiffs assert four counts in their lawsuit, the first three of which come under 42 U.S.C. § 1983:

- **Count I:** Zhou asserts an excessive force claim against Willadsen, contending that he "used unreasonable and excessive force by choking [him]." *Id.* at ¶ 242.
- **Count II:** All Plaintiffs except SJPUTD assert malicious prosecution claims against all Defendants, contending that they subjected Plaintiffs to "wrongful harassment by the police, wrongful arrest, and wrongful incarceration and or detention." *Id.* at ¶ 249.
- **Count III:** All Plaintiffs assert First Amendment claims against all Defendants, contending that Defendants retaliated against them for exercising their right to free speech. *Id.* at ¶¶ 254–55.
- **Count IV:** All Plaintiffs assert free speech and assembly claims against all Defendants under the Texas Constitution. *Id.* at ¶¶ 256–58.

Plaintiffs seek a declaration "that Defendants' violated [their] constitutional rights" and request monetary damages. *Id.* at pg. 56. This case is at an early stage. Neither side has engaged in discovery.

# ARGUMENT

## I. This Court Lacks Jurisdiction Over Parts Of Plaintiffs' Claims.

### A. Sovereign Immunity Bars Plaintiffs' Texas Constitutional Claims.

Plaintiffs assert claims under the Texas Constitution. But Texas has not

abrogated or waived its sovereign immunity for state constitutional claims brought in federal court. *See, e.g.*, *Richardson v. Tex.*, No. 23-40526, 2024 WL 913380, at *4 (5th Cir. Mar. 4, 2024); *Gautreaux v. Masters*, No. 1:21-CV-01166-LY, 2022 WL 3723298, at *8 (W.D. Tex. Aug. 29, 2022); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 n.9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."). Further, the *Ex parte Young* exception does not apply as it "only reaches alleged violations of *federal* law." *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015); *see also Pennhurst State Sch. & Hosp.*, 465 U.S. at 104. Thus, Defendants' sovereign immunity bars Plaintiffs' claims brought under the Texas Constitution.

### B. Sovereign Immunity Bars Plaintiffs' Equitable Relief Claims; These Claims Also Fail On Standing Grounds.

Plaintiffs rely on the *Ex parte Young* exception to overcome Defendants' sovereign immunity regarding their request for a declaration "that Defendants' violated [their] constitutional rights." *See* ECF 14, pg. 56. For this exception to apply: "(1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quotations omitted).

Yet the Fifth Circuit has found that a declaration that defendants violated the plaintiffs' constitutional rights "is fundamentally retrospective because it does not relate

to an ongoing violation of their federal rights." *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020); *see also Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425–26 (5th Cir. 2020). Thus, binding precedent bars Plaintiffs' claims for declaratory relief.

Also, "[t]o be a proper defendant under *Ex parte Young*, a state official must have some connection with the enforcement of the law being challenged." *Mi Familia Vota*, 105 F.4th at 325–26 (quotations omitted). Article III standing similarly requires that the plaintiff's injury be fairly traceable to the defendant's conduct and redressable by a judgment in the plaintiff's favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (explaining that "standing is not dispensed in gross" and that "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek") (quotations omitted).

Plaintiffs cannot meet these requirements with respect to all Defendants sued. Indeed, many of the named Defendants have no meaningful connection to Plaintiffs' alleged injuries, as explained in more detail below. *Infra*, 13, 17–18, 31–32, 34–35.

## II. Plaintiffs' Claims Fail On The Merits.

### A. An Overview Of The Qualified Immunity Doctrine.

"The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir.

2010). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotations omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotations omitted).

It is the plaintiff's burden to negate a properly raised qualified immunity defense. *Collier v. Montgomery*, 569 F.3d 214, 217–18 (5th Cir. 2009). Plaintiffs here will not be able to meet that burden for any of their § 1983 claims.

### B. Plaintiffs Did Not Plead Key Elements Of Their Malicious Prosecution Claims, And The Existence Of Valid Arrest Warrants Defeats Their Claims.

A plaintiff asserting a § 1983 malicious prosecution claim must prove an unlawful Fourth Amendment seizure and establish the following elements:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025) (quotations omitted).

Plaintiffs complained that "Defendants wrongfully instituted legal process against [them]," but Plaintiffs did not specify the legal processes at issue. *See* ECF 14, ¶ 249. Thus, out of caution, Defendants will address: (1) the May 1, 2024 arrests of Abusaad, Najjar, and Choi; (2) the issues regarding Abusaad's, Najjar's, and Choi's violation of their bond conditions; and (3) the arrests of Elseisy and Zhou for disrupting UTD's May 16, 2025 commencement ceremony. As shown below, Plaintiffs did not

allege viable malicious prosecution claims concerning these incidents. And they certainly will not be able to show that Defendants violated their clearly established rights.

**1. Analysis For The May 1, 2024 Arrests Of Abusaad, Najjar, And Choi.**

Plaintiffs did not plead a clearly established violation of their rights to be free from malicious prosecution regarding the May 1, 2024 arrests of Abusaad, Najjar, and Choi.

To begin, Plaintiffs alleged no facts showing that any of the Defendants were involved in these arrests. *See id.* at ¶¶ 175–77, 200, 211, 231. Thus, they did not establish that Defendants were the legal cause of the criminal proceedings against them. Nor did they show Defendants' personal involvement in the alleged unconstitutional acts, which is an essential element of a § 1983 claim. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

Further, Plaintiffs did not assert that the criminal proceedings concerning their May 1, 2024 arrests terminated in their favor, as needed to establish a viable malicious prosecution claim. *See* ECF 14, ¶¶ 175–77, 200, 211, 231; *Haygood v. Morrison*, 116 F.4th 439, 446 (5th Cir. 2024) ("Malicious prosecution requires, as an element of the tort, the favorable termination of proceedings.").

Moreover, Plaintiffs alleged no facts showing that Defendants acted with "malice" in connection with the May 1, 2024 arrests. *See Kerns v. Dickson*, No. 25-40349,

2026 WL 396358, at *6 n.35 (5th Cir. Feb. 12, 2026) (explaining that a plaintiff must plead facts showing that the defendant acted with a mental state akin to common law malice to sustain a malicious prosecution claim).

Finally, Plaintiffs did not plead the absence of probable cause for the criminal proceedings against them, as needed to sustain their malicious prosecution claims. Thus, Abusaad's, Najjar's, and Choi's malicious prosecution claims regarding their May 1, 2024 arrests should be dismissed.

**2. Analysis For Abusaad's, Najjar's, And Choi's Violations Of Their Bond Conditions.**

Abusaad's, Najjar's, and Choi's malicious prosecution claims regarding their bond condition violations are also deeply flawed. There are six reasons why.

First, Abusaad merely alleged that she received a trespass notice after attending her graduation ceremony in violation of her bond conditions. ECF 14, ¶ 206. She did not contend that she was arrested or that criminal proceedings were brought against her due to this incident. *See id.* at ¶¶ 197–206. Thus, Abusaad cannot establish that a criminal proceeding was commenced or continued against her regarding the bond conditions incident. Further, she did not establish an unlawful Fourth Amendment seizure, which is a "threshold element" of her malicious prosecution claim. *See Armstrong v. Ashley*, 60 F.4th 262, 279 n.15 (5th Cir. 2023); *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) ("In the Fourth Amendment context, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free

to leave.") (quotations omitted).

Along the same lines, Choi admitted that "[t]h Dallas County District Attorney's Office did not file an indictment or information against [him]" for violating his bond conditions. ECF 14, ¶ 239. Thus, Choi likewise cannot establish that a criminal proceeding was commenced or continued against him regarding the bond conditions incident. Further, some courts, including the Fifth Circuit, have rejected malicious prosecution claims in similar circumstances. *See, e.g.*, *Shearer v. Bowen*, 216 F.3d 1080 (5th Cir. 2000) ("The grand jury . . . returned a no true bill and did not indict [Shearer]. Consequently, Shearer has not established that a prosecution commenced against her, and her Fourth Amendment claim for malicious prosecution must fail."); *Burwell v. Hee*, No. 2:21-CV-01901-RFB-EJY, 2026 WL 381882, at *3 (D. Nev. Feb. 10, 2026) ("[T]he charges Metro may have filed with the Clark County District Attorney's Office were rejected and no proceedings commenced. Given these undisputed facts, the Court finds Plaintiff has not and cannot state a malicious prosecution claim."); *see also Khanna v. City & Cnty. of San Francisco*, No. 25-CV-06965-JCS, 2026 WL 1537047, at *20 (N.D. Cal. June 1, 2026) ("A claim for malicious prosecution is distinct from a false arrest claim in that the former is based on the abuse of the legal process and thus does not arise until a criminal complaint is filed.").

Second, Plaintiffs did not allege that Abusaad's and Choi's criminal proceedings concerning the bond conditions incidents terminated in their favor, as needed for their malicious prosecution claims. *See Santander*, 133 F.4th at 482.

Third, Plaintiffs did not plausibly allege that Defendants acted with malice. *See Sessanga v. City of DeSoto*, No. 24-11050, 2025 WL 2848715, at *2 (5th Cir. Oct. 8, 2025) ("Sessanga's statement that the police's conduct was 'malicious and biased' is conclusory and not treated as fact for the purpose of our [malicious prosecution] analysis."). At most, Plaintiffs alleged nothing more than a good faith disagreement about whether their bond conditions, which said they could not be present on campus except for attending class and class-related activities, barred their attendance at a voluntary UTD graduation ceremony. *See* ECF 14, ¶¶ 197–240.

Fourth, Plaintiffs did not establish the absence of probable cause for Abusaad's, Najjar's, and Choi's arrests. Rather, their bond conditions provided notice that they were not allowed on campus for voluntary events like their graduation ceremonies. *See* Tex. Penal Code § 30.05(a)(1) (making it an offense for a person to enter the property of another if the person "had notice that the entry was forbidden").

Fifth, Najjar and Choi admitted that they were arrested pursuant to arrest warrants. *See* ECF 14, ¶¶ 221, 237. This effectively forecloses their malicious prosecution claims. *See Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984) ("Where an arrest is made under authority of a properly issued warrant . . . [the] arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim."); *see also Brown v. U.S. Postal Serv.*, 338 Fed. Appx. 438, 441–42 (5th Cir. 2009). The reasoning is that when the officer puts the facts supporting the warrant "before an impartial intermediary such as a magistrate or a grand jury," that

"intermediary's independent decision breaks the causal chain and insulates the initiating party." *Thomas*, 734 F.2d at 191 (quotations omitted).

An exception to the rule above applies when the officer "withholds any relevant information or otherwise misdirects the independent intermediary by omission or commission." *Trevino v. Iden*, 79 F.4th 524, 532 (5th Cir. 2023) (quotations and brackets omitted). But Plaintiffs alleged nothing of the sort here.

Finally, Plaintiffs did not establish legal causation or personal involvement for all Defendants sued. For instance, Choi alleged no facts showing that *any* of the Defendants were involved in his arrest. *See* ECF 14, ¶¶ 227–40. As for Najjar, he alleged only that Defendants Rod Bishop and Amanda Smith played a role in his arrest. *See id.* at ¶¶ 207–226. Regarding Abusaad, she did not allege that a criminal proceeding was initiated against her. So, by definition, she cannot establish that any of the Defendants were the legal cause for such a proceeding.

**3. Analysis For The Arrests Of Elseisy And Zhou.**

Plaintiffs' malicious prosecution claims concerning the arrests of Elseisy and Zhou fail for many of the same reasons discussed above. First, Plaintiffs admitted that Elseisy and Zhou were arrested pursuant to arrest warrants. *Id.* at ¶¶ 51–53, 115. This effectively dooms their malicious prosecution claims, as previously explained.

Second, Elseisy and Zhou were arrested and detained for their disruption of the May 16, 2025 commencement ceremony, which violates Tex. Penal Code § 42.05. *Supra*, 4–7. Thus, there was probable cause for their arrests.

Third, Plaintiffs did not establish an unlawful Fourth Amendment seizure, as needed for Elseisy's and Zhou's malicious prosecution claims. *See, e.g.*, *Armstrong*, 60 F.4th at 279 n.15; *Kelson*, 1 F.4th at 417. Rather, the amended complaint clearly details proper grounds for the arrests and prosecutions of Elseisy and Zhou—namely, their disruptions of the May 16th ceremony, plus valid arrest warrants.

Fourth, Plaintiffs did not allege that the arrests of Elseisy and Zhou were motivated by malice. Rather, the facts show that UTD was simply concerned about preventing unlawful disruptions on its campus. *See* ECF 14, ¶¶ 29–134.

Fifth, Plaintiffs did not establish legal causation or personal involvement for all Defendants sued. For Elseisy, there are no alleged facts showing that any of the Defendants were involved in his arrest, except for Willadsen who coordinated with the DFW Airport Police regarding this arrest. *See id.* at ¶ 117. And Zhou's malicious prosecution claim is limited to David Wawak (who filed the probable cause affidavit) and Willadsen (who effectuated the arrest). *See id.* at ¶¶ 51, 54. He did not allege that any of the other Defendants meaningfully participated in his arrest. Thus, Elseisy's malicious prosecution claim should be limited to Willadsen, and Zhou's claim should be limited to Wawak and Willadsen.

Finally, neither Elseisy nor Zhou alleged that their criminal proceedings terminated in their favor, which is an essential element of their malicious prosecution claims and which further shows that their seizures were not "unlawful." *Heck v. Humphrey* also works to bar Elseisy's claim. More on this below.

**Analysis for Elseisy:** Elseisy alleged that he signed a pretrial agreement with the Dallas County District Attorney's office. *Id.* at ¶ 132. This agreement required him to "'commit no offenses in violations of laws of the State of Texas' for 30 days, 'abstain from all illegal substances' and 'voluntarily, knowingly, and intelligently waive' his rights to a complete expunction of the records and files relating to his arrest." *Id.* Elseisy further stated that the Dallas County District Attorney's office dismissed the criminal case against him due to "his successful completion of the requirements outlined in the Pretrial Intervention Agreement." *Id.* at ¶ 134. These allegations do not show that the criminal case against Elseisy terminated in his favor.

Under the *Heck v. Humphrey* doctrine, "[i]f a judgment for plaintiff would imply that his conviction or sentence was invalid, the court must dismiss the claim unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Ray v. Recovery Healthcare Corp.*, No. 22-10303, 2022 WL 16945898, at *2 (5th Cir. Nov. 15, 2022) (quotations omitted). "This is sometimes called the 'favorable termination' exception." *Id.*

In *Morris v. Mekdessie*, the Fifth Circuit found that a pretrial diversion agreement like Elseisy's[6] did not establish that the criminal proceeding terminated in the plaintiff's favor. 768 Fed. Appx. 299, 301–02 (5th Cir. 2019). In doing so, the Court noted that a

[6] Elseisy refers to his agreement as a "Pretrial Intervention Agreement." ECF 14, ¶ 134. This is synonymous with a "pretrial diversion agreement." *See Davis v. State*, No. 06-23-00170-CR, 2024 WL 413479, at *2 (Tex. App.—Texarkana Feb. 5, 2024, no pet.) ("[A] pretrial intervention agreement [is] sometimes called a pre-trial diversion agreement"); *Lee v. State*, 560 S.W.3d 768, 770 (Tex. App.—Eastland 2018, pet. ref'd) (using these two terms as synonymous labels for the same legal mechanism).

pretrial diversion program "is essentially a middle ground between conviction and exoneration." *Id.* at 301. The Court also stated that "[e]ven though it is not a guilty plea, defendants entering diversion programs acknowledge responsibility for their actions." *Id.* (quotations omitted). Thus, the Court determined that a "pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant." *Id.* (quotations omitted). As such, the Court found that the *Heck* bar foreclosed the plaintiff's malicious prosecution claims. *Id.* at 301–02.

The Supreme Court's decision in *Thompson v. Clark* complicated the analysis somewhat. There, the prosecution had moved to dismiss the criminal charges against the plaintiff without explanation, and the trial judge in turn dismissed the case. *Thompson v. Clark*, 596 U.S. 36, 40 (2022). The plaintiff sued under § 1983 for malicious prosecution. *Id.* at 39.

The key issue was whether a malicious prosecution plaintiff must "demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient." *Id.* The Court found that such evidence is not required and that a plaintiff suing for malicious prosecution under § 1983 "need only show that the criminal prosecution ended without a conviction." *Id.* at 49.

Since *Thompson*, the Fifth Circuit has not explicitly revisited its caselaw holding that a pretrial diversion agreement does not constitute a favorable termination of a criminal proceeding. That said, district courts in this circuit have continued to adhere

to prior Fifth Circuit precedent on this point. *See, e.g.*, *Prosper v. City of Houston*, No. 4:23-CV-02603, 2024 WL 1184175, at *4–5 (S.D. Tex. Feb. 13, 2024) (finding that *Heck* barred the plaintiff's First Amendment claim as the plaintiff's criminal case "was dismissed after he completed a pretrial diversion program"); *Landrum v. Dowies*, No. CV 23-340-P, 2024 WL 1068667, at *4 (W.D. La. Feb. 21, 2024) (finding that *Heck* barred the plaintiff's § 1983 claim based on allegedly fabricated evidence and perjury as the plaintiff's criminal case was dismissed pursuant to a pretrial diversion agreement).

The Second Circuit's decision in *Chapdelaine v. Desjardin* is also instructive. The plaintiff there sued under § 1983 for malicious prosecution. *Chapdelaine v. Desjardin*, 180 F.4th 454, 465 (2d Cir. 2026). The plaintiff argued that "under *Thompson*, her participation in a one-day supervised diversionary program amounts to a favorable termination and does not bar her malicious prosecution claims." *Id.* at 466.

The Second Circuit rejected this argument, finding that "[i]t would make little sense to permit a plaintiff who agreed to a compromise, in return for the dismissal of charges, to then bring a lawsuit against the state actors claiming favorable termination." *Id.* at 467. The court further noted that "[s]uch a result would also undermine the purposes of the favorable termination element, which include preventing parallel litigation in civil and criminal proceedings over the issue of guilt and the use of civil lawsuits as collateral attacks on criminal proceedings." *Id.* Thus, the Second Circuit affirmed the dismissal of the plaintiff's malicious prosecution claims. *Id.*

The caselaw above shows that a pretrial diversion agreement like Elseisy's does

not constitute a bona fide termination of the criminal proceeding in his favor, as needed for him to establish his malicious prosecution claim and to overcome the *Heck* doctrine. At the least, it is unsettled whether *Thompson* effectively overruled prior Fifth Circuit caselaw on this issue. Thus, qualified immunity applies as it was not clearly established that the dismissal of Elseisy's criminal proceeding in this context would amount to a bona fide termination in his favor.

**Analysis For Zhou:** Judicially noticeable records show that there is an ongoing criminal proceeding stemming from Zhou's arrest for disrupting the commencement ceremony. *See* Appx., 29–36.[7] Thus, he cannot establish that the criminal proceeding terminated in his favor.

Zhou may counter that the Dallas County District Attorney's Office rejected the case against him for one of his charges (felony assault) "without attempting to present it to the grand jury." ECF 14, pg. 5. But this is irrelevant under Fifth Circuit precedent. *See Armstrong*, 60 F.4th at 279 n.15 ("Importantly, because an unlawful seizure is the threshold element, *if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward*.") (emphasis added) (citations omitted).

Also, the early rejection of Zhou's felony arrest charge suggests that there was no "commencement . . . of an original criminal proceeding" related to this charge. *See*

[7] This publicly available document can be found by going to https://courtsportal.dallascounty.org/DALLASPROD/Home/Dashboard/29, entering "Zhou, Chengyang," and clicking on the link for case number "M-25-50472."

*Santander*, 133 F.4th at 482. As noted previously, some courts, including the Fifth Circuit, have rejected malicious prosecution claims in similar circumstances. *Supra*, 15. At the least, qualified immunity protects Defendants from Zhou's malicious prosecution claim regarding the felony assault charge, as it was not clearly established that the early dismissal of this charge would operate as the commencement of a criminal proceeding against him.

### C. Plaintiffs Did Not Allege Viable First Amendment Retaliation Claims.

To establish First Amendment retaliation claims outside of the employment context, the plaintiffs must show that:

> (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Plaintiffs here cannot establish these three elements for their First Amendment claims.

#### 1. Analysis For Elseisy, Zhou, and SJPUTD.

Elseisy's, Zhou's, and SJPUTD's First Amendment retaliation claims fail as: (1) their disruptive conduct was unprotected under *Tinker*; (2) they did not establish the absence of probable cause for Elseisy's and Zhou's arrests, as *Nieves v. Bartlett* generally requires; (3) their allegations confirm that UTD merely enforced content-neutral policies, which is not actionable in this context; (4) they did not allege that Defendants

had the requisite retaliatory motive; (5) they sued Defendants with no meaningful connection to their arrests or discipline; and (6) the *Heck* doctrine bars Elseisy's First Amendment retaliatory arrest claim.

***Tinker* Analysis:** In *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, the Supreme Court held that school officials may restrict student speech upon showing "facts which might reasonably have led school authorities to forecast [that the proscribed speech would cause] substantial disruption of or material interference with school activities." 393 U.S. 503, 514 (1969). *Tinker* governs various types of school-based First Amendment claims, including retaliation. *See Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 351 (5th Cir. 2017); *Davis v. Angelina Coll. Bd. of Trustees*, No. 9:17-CV-00179, 2018 WL 10111001, at *7–8 (E.D. Tex. June 1, 2018).

*Tinker's* standard is lenient. An official prevails so long as he could reasonably forecast that the restricted speech would substantially disrupt the school's activities. *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 397 (5th Cir. 2015). An official's decision on this point is afforded deference. *Id.*

To justify a speech restriction under *Tinker*, an official must be able to point to "a specific and significant fear of disruption, not just some remote apprehension of disturbance." *Id.* at 397. Where an official reasonably forecasts substantial disruption, a First Amendment claim fails as the underlying speech is "not immunized by the constitutional guarantee of freedom of speech." *Tinker*, 393 U.S. at 513.

Here, the May 16, 2025 protest disrupted the commencement ceremony as

UTD's President had to pause his speech until the protest subsided. ECF 14, pg. 4; *id.* at ¶ 129. Under *Tinker*, Elseisy's, Zhou's, and SJPUTD's disruption of this event was not activity protected by the First Amendment. *See* 393 U.S. at 513. As such, Elseisy, Zhou, and SJPUTD cannot establish the first element of their retaliation claim—that they were engaged in constitutionally protected activity. *See Keenan*, 290 F.3d at 258.

Plaintiffs may try to circumvent the analysis above by arguing that *Tinker* does not apply to higher education. But the Supreme Court applied *Tinker* to a public university in *Healy v. James*. There, a state college denied official recognition to a group of students who wanted to form a local chapter of the Students for a Democratic Society ("SDS"). *Healy v. James*, 408 U.S. 169, 170 (1972). The plaintiffs sued, asserting a denial of their First Amendment rights. *Id.* at 177. The college's president justified the nonrecognition decision by claiming that the SDS chapter would be a "disruptive influence" to the college. *Id.* at 188.

*Healy* held that the college's "disruptive influence" rationale could have been a lawful basis for its decision not to recognize SDS if it had been based on the organization's activities and factually supported by the record. *Id.* The Court cited *Tinker* as one of the main cases supporting this conclusion and explained that "actions which 'materially and substantially disrupt the work and discipline of the school'" can be lawfully prohibited. *Id.* at 189 (quoting *Tinker*, 393 U.S. at 513). The Court also stated that "if there were an evidential basis to support the conclusion that [the local] SDS posed a substantial threat of material disruption . . . the President's decision should be

affirmed." *Id.*

Further, in *Jenkins v. Louisiana State Board of Education*, six Grambling College students were suspended for their alleged participation in certain campus disturbances. 506 F.2d 992, 994 (5th Cir. 1975). The students challenged their suspensions on First Amendment grounds. *Id.* The Fifth Circuit stated that *Tinker* established "[t]he controlling rule to be applied" to the students' First Amendment claims, and it found that the students' actions "resulted in a material disruption of the campus and of the rights of others." *Id.* at 1002–03. Thus, the Court held that the students' conduct "[was] not protected by the First Amendment." *Id.*

This Court should follow binding precedent, find that *Tinker* applies, and dismiss Elseisy's, Zhou's. and SJPUTD's First Amendment claims for lack of protected activity. At the least, the constitutionality of Defendants' conduct under a *Tinker* analysis is open to debate, which means that qualified immunity bars Elseisy's, Zhou's. and SJPUTD's retaliation claims. *See, e.g.*, *Heilrayne v. Univ. of Tex. At Austin*, No. 1:25-CV-640-DAE, 2026 WL 630966, at *14–15 (W.D. Tex. Jan. 27, 2026) (finding that qualified immunity barred plaintiffs' First Amendment claims over a university's cancellation of an SJP protest and subsequent discipline of protestors due to uncertainty regarding *Tinker's* application in that setting).

***Nieves* Analysis:** As discussed earlier, probable cause supported the arrests of Elseisy and Zhou. *Supra*, 17. This effectively precludes their First Amendment retaliatory arrest claims under the Supreme Court's decision in *Nieves*. As the Court

explained, a plaintiff must "plead and prove the absence of probable cause for the arrest" to assert a viable First Amendment claim arising from an arrest. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). This is because "retaliatory arrest cases . . . present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury." *Id.* at 401.

To this end, the "[absence of probable cause] will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* The probable cause inquiry must focus on "whether the circumstances, viewed objectively, justify the [defendant's] challenged action." *Id.* at 403 (quotations and brackets omitted).

The *Nieves* Court acknowledged a slim exception to its test "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. *Nieves* hypothesized one situation where this exception would apply. The Court noted that "jaywalking is endemic but rarely results in arrest." *Id.* at 407. "If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id.* Thus, the Court concluded that "the no-probable-cause requirement should not apply when a plaintiff presents *objective* evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* (emphasis added).

Plaintiffs here did not allege that disruption of graduation ceremonies were endemic at UTD but rarely enforced. Nor did they allege that they were treated less favorably than other similarly situated comparators. Thus, *Nieves* bars Elseisy's and Zhou's retaliation claims arising from their arrests.

**Content-Neutral Policy Analysis:** Elseisy's, Zhou's, and SJPUTD's expressive conduct during the May 16, 2025 protest was not protected from UTD's content-neutral policies barring disruptive conduct. *See Navratil v. City of Racine*, 101 F.4th 511, 519–20 (7th Cir. 2024) ("[The plaintiff's expressive] conduct was not protected . . . from reasonable and content-neutral restrictions on the time, place, and manner of his expression."); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 Fed. Appx. 959, 962–63 (6th Cir. 2019) ("[T]he prohibition of Rule 52 on the combination of alcohol service with nude dancing is constitutional. Therefore, WCI's violation of this rule by serving alcohol was not constitutionally protected conduct."); *Taylor v. Doe*, No. MO:20-CV-00124-DC, 2022 WL 19561802, at *6 n.3 (W.D. Tex. May 31, 2022) ("When determining whether speech is constitutionally protected under the first prong of the [First Amendment retaliation] analysis, the Supreme Court has upheld the use of reasonable time, place, and manner restrictions."); *see also Doe v. Mckesson*, 71 F.4th 278, 293 (5th Cir. 2023) ("It is well-established that expressive activity is not a defense to an individual's own unlawful conduct.") (citations omitted).

"Content-neutral regulations of time, place, and manner of expression in a public forum are permitted when they are narrowly tailored to serve a significant government

interest and leave open ample alternative channels of communication." *Moore v. Brown*, 868 F.3d 398, 403–04 (5th Cir. 2017). UTD's policies barring disruptive conduct (its "anti-disruption policies") easily meet this standard. *See supra*, 5–8 (discussing the policies at issue).

First, UTD's anti-disruption policies are content-neutral as they do not "appl[y] to particular speech because of the topic discussed or the idea or message expressed." *See Siders v. City of Brandon, Mississippi*, 123 F.4th 293, 304 (5th Cir. 2024) (quotations omitted).

Second, UTD's anti-disruption policies implicate the school's interest in ensuring that its scheduled activities and meetings are orderly, efficient, and free from materially disruptive behavior. Courts have recognized this to be a significant government interest. *See Thomas v. Howze*, 348 Fed. Appx. 474, 478 (11th Cir. 2009) ("There is a significant governmental interest in conducting orderly, efficient meetings of public bodies.") (quotations omitted); *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1204–05 (10th Cir. 2002) ("[T]here is a significant government interest in preventing disruptions to classes or substantial disorder."); *Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, 43 F.3d 1472 (6th Cir. 1994) ("The government has a significant interest in the orderly and efficient conduct of its business.").

Third, UTD's anti-disruption policies are narrowly tailored to serve the school's legitimate interests. "[T]he requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less

effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quotations and ellipsis omitted). Such is the case here: UTD's interest in preventing disruptions to school activities would, of course, "be achieved less effectively" were it not for the university's ban on such disruptions.

Finally, UTD's anti-disruption policies leave open ample alternative channels of communication. Namely, Plaintiffs could have protested elsewhere on campus, away from UTD's scheduled commencement ceremony. *See UTDSP5003*, § C.9.6(14), (18), *supra* note 1.

In sum, UTD's anti-disruption policies were constitutional time, place, and manner restrictions. And Elseisy's, Zhou's, and SJPUTD's conduct during the May 16th protest was not protected from UTD's reasonable and lawful restrictions on disruptive activity. *See Navratil*, 101 F.4th ay 519–20; *WCI, Inc.*, 774 Fed. Appx. at 962–63; *Taylor*, 2022 WL 19561802, at *6 n.3. At the least, Plaintiffs cannot show that Defendants' conduct violated Elseisy's, Zhou's, and SJPUTD's clearly established rights in this context, as needed to overcome Defendants' qualified immunity.

**Retaliatory Motive Analysis:** "A claim is merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and obvious alternative explanation." *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. Appx. 892, 897 (5th Cir. 2020) (quotations omitted). Here, the legal and obvious explanation is simple: UTD sincerely believed that Elseisy, Zhou, and SJPUTD disrupted the May 16th commencement ceremony in violation of

the university's anti-disruption policies. Plaintiffs offered no well-pled facts that would allow the Court to reject this lawful explanation and find that UTD suspended Elseisy, Zhou, and SJPUTD due to the content or viewpoint of their speech. Thus, Plaintiffs did not adequately plead the third prong of Elseisy's, Zhou's, and SJPUTD's retaliation claims. *See Keenan*, 290 F.3d at 258.

**Causation Analysis:** There are no allegations connecting most of the Defendants to Elseisy's, Zhou's, and SJPTUTD's retaliation claims. Thus, causation and personal involvement are lacking as follows.

*Elseisy:* Elseisy alleged that only Willadsen was involved in his arrest. *See* ECF 14, ¶¶ 115–23. And he contended that Smith and Gene Fitch were the only Defendants who were meaningfully involved in his disciplinary proceeding. *See id.* at ¶¶ 106–14, 124–31. Thus, Elseisy's arrest-based retaliation claim should be limited to Willadsen, and his discipline-based claim should be limited to Smith and Fitch.

*Zhou:* Zhou alleged that Wawak filed the arrest warrant and that Willadsen effectuated his arrest. *Id.* at ¶¶ 51, 54. Zhou also contended that David Chang was present for his arrest. *Id.* at ¶¶ 53–54. But this is insufficient to establish Chang's personal involvement. *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) ("[S]upervisory liability under the 'personal involvement' theory requires something more than mere presence at the scene where subordinates allegedly violated the plaintiff's constitutional rights. The plaintiff must demonstrate an officer's 'overt personal participation' in the violation of his own rights, not someone else's."); *Alford*

*v. Deffendoll*, 165 F.4th 490, 496–97 (6th Cir. 2026) ("In the context of a false-arrest claim, an officer's 'mere presence' at the scene of the arrest or acting as 'mere backup' to the arresting officer does not constitute personal involvement.").

Regarding Zhou's discipline-based claim, he alleged that Smith and Fitch were the only Defendants who were meaningfully involved in his disciplinary proceeding. ECF 14, ¶¶ 45–50, 66–92. Thus, Zhou's arrest-based retaliation claim should be limited to Wawak and Willadsen, and his discipline-based claim should be limited to Smith and Fitch.

*SJPUTD:* SJPUTD alleged that Fitch affirmed the hearing officer's decision to suspend SJPUTD. *Id.* at ¶¶ 155. Regarding Smith, SJPUTD merely contended that she testified as a witness at the disciplinary hearing. *Id.* at ¶ 144. This is insufficient to establish her personal involvement. *See Perez v. Hume*, No. 14-CV-6349-FPG, 2017 WL 953204, at *4 (W.D.N.Y. Mar. 10, 2017) ("[T]o be liable under § 1983, a defendant must have been personally involved in the constitutional violation, and testifying as a witness at hearing is not sufficient to establish personal involvement."); *see also Jackson v. Burkett*, No. 6:18CV323, 2018 WL 5019403, at *3 (E.D. Tex. Aug. 1, 2018) (finding that a defendant who merely witnessed another person's unlawful act was not sufficiently personally involved in that act). Thus, SJPUTD's claim should be limited to Fitch.

***Heck* Doctrine Analysis:** Courts in this circuit have found that the *Heck* doctrine applies to a First Amendment claim for retaliatory arrest. *See, e.g.*, *Prosper*, 2024 WL 1184175, at *4–5; *Phillips v. City of Baytown*, No. 4:22-CV-2197, 2023 WL 4163062,

at *11 (S.D. Tex. Mar. 3, 2023); *Launza v. City of Mesquite*, No. 3:20-CV-01710-E (BT), 2021 WL 4954348, at *6 (N.D. Tex. Oct. 8, 2021). As noted above, the *Heck* doctrine bars Elseisy's § 1983 malicious prosecution claim as his pretrial diversion agreement did not constitute a favorable termination of his criminal proceeding. *Supra*, 19–22. That analysis holds true here, and the *Heck* doctrine operates to bar Elseisy's First Amendment claim for retaliatory arrest.

**2. Analysis For Abusaad, Najjar, And Choi.**

Abusaad's, Najjar's, and Choi's First Amendment retaliation claims fail for many of the same reasons noted above.

First, Najjar's and Choi's retaliation claims concern their arrests, and Abusaad's claim turns on a criminal trespass notice stemming from a prior arrest. *Supra*, 8–9. Yet these Plaintiffs did not plead and prove the absence of probable cause for their arrests, as *Nieves* generally requires. *See* 587 U.S. at 402. And Abusaad's, Najjar's, and Choi's expressive activities do not insulate them from the consequences of their unlawful conduct, including their decisions to violate their bail conditions. *See Mckesson*, 71 F.4th at 293 ("It is well-established that expressive activity is not a defense to an individual's own unlawful conduct.") (citations omitted).

Second, Plaintiffs did not allege that Defendants harbored the requisite retaliatory motive. Rather, their allegations confirm that Defendants acted against Abusaad, Najjar, and Choi not because of the content or viewpoint of their speech, but rather because Defendants sincerely believed that they violated their bond conditions.

*See* ECF 14, ¶¶ 197–240. These Plaintiffs' retaliation claims are implausible in light of this lawful and obvious alternative explanation for Defendants' conduct. *See United States ex rel. Integra Med Analytics, L.L.C.*, 816 Fed. Appx. at 897.

Also notable, Plaintiffs offered no facts that would nudge their claims across the "plausibility" line—such as by showing that Defendants treated similarly situated students more favorably. *See Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *6 (5th Cir. Oct. 8, 2024) (explaining in the Title VII context that a Rule 12(b)(6) dismissal is appropriate "when a plaintiff did not allege any facts . . . that would suggest the defendant's actions were based on the plaintiff's race or national origin or that the defendant treated similarly situated employees of other races or national origin more favorably") (cleaned up). Moreover, Plaintiffs admitted that Choi was arrested for attending his graduation ceremony even though he did not express pro-Palestinian viewpoints at this event. ECF 14, ¶¶ 234, 237. This further shows that Defendants' interpretation of Abusaad's, Najjar's, and Choi's bond conditions had nothing to do with their expressive activities during their graduation ceremonies.

Finally, there are no allegations connecting most of the Defendants to Abusaad's, Najjar's, and Choi's retaliation claims. Thus, causation and personal involvement are lacking as follows.

*Abusaad:* Abusaad alleged that "Smith instructed the police officers Defendants Tourangeau, Wawak, Alvarado, and Clark to 'go ahead and escort her off campus and she should be criminally trespassed as well.'" *Id.* at ¶ 205. She also contended that Clark

signed the trespass warning she received. *Id.* at ¶ 206. Yet she did not allege that Tourangeau, Wawak, or Alvardo—or any other Defendants for that matter—did anything more than be present at the scene where she received this notice. *See id.* at ¶¶ 205–06. Thus, Abusaad's retaliation claim should be limited to Smith and Clark. *See Mesa*, 543 F.3d at 274; *Alford*, 165 F.4th at 496–97.

*Najjar:* Najjar alleged that Smith interpreted his attendance at the graduation ceremony to fall outside of his bond conditions. ECF 14, ¶ 220. And he contended that Bishop completed a warrant for his arrest. *Id.* at ¶ 221. Najjar did not allege that any other Defendants were meaningfully involved in the acts underlying his retaliation claim. Thus, Najjar's claim should be limited to Smith and Bishop.

*Choi:* Choi did not allege that *any* Defendants were meaningfully involved in his arrest. *See id.* at ¶¶ 227–40. Thus, his retaliation claim should be dismissed.

### D. Zhou Did Not Allege A Clearly Established Violation Of His Right To Be Free From Excessive Force.

At issue is Willadsen's alleged violation of Zhou's Fourth Amendment right to be free from excessive force. Such a claim requires a showing of: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Williams v. City of Cleveland, Miss.*, 736 F.3d 684, 688 (5th Cir. 2013) (quotations omitted). Zhou's excessive force claim fails as he did not plausibly allege that Willadsen violated his clearly established rights.

The Supreme Court's recent decision in *Zorn v. Linton* is instructive regarding

what is needed to overcome an official's qualified immunity in the excessive force context. There, the plaintiff (Shela Linton) was part of a staged sit-in at the Vermont state capitol. *Zorn v. Linton*, 146 S. Ct. 926, 928 (2026). Linton did not comply with the officers' order that she leave the premises or else she would be arrested for trespassing. *Id.* Linton was forcibly removed. *Id.* at 928–29. In doing so, one officer (Jacob Zorn) "took Linton's arm, put it behind her back, placed pressure on her wrist, and lifted her to her feet." *Id.* at 929.

Linton sued Zorn for excessive force. The Second Circuit held that Zorn was not entitled to qualified immunity, stating that one of its prior decisions, *Amnesty America*, "clearly established that the 'gratuitous' use of a rear wristlock on a protester passively resisting arrest constitutes excessive force." *Id.* at 930.

The Supreme Court reversed. The Court noted that, "To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." *Id.* (quotations and ellipsis omitted). Further, "the relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (quotations omitted). Put differently, "[w]hether any particular use of force violates the Fourth Amendment depends on the facts and circumstances of each particular case." *Id.* (quotations omitted).

The Supreme Court found that the circumstances underlying *Amnesty America* were not sufficiently analogous to Linton's case. *Id.* at 930–31. Further, the Court noted

that the Second Circuit's reading of *Amnesty America*—as establishing that the gratuitous use of pain compliance techniques on protestors who passively resisted arrest—"lack[ed] the high degree of specificity needed to make it clear to officers which actions violate the law." *Id.* at 931 (quotations omitted). Thus, the Court found that Zorn was entitled to qualified immunity. *Id.*

Here, Willadsen briefly wrapped his arm around the neck of a protestor to remove a potentially loud instrument he was playing shortly after he left an event he disrupted. To overcome Willadsen's qualified immunity, Zhou will need to identify caselaw analyzing similar facts and finding the officer's conduct to constitute excessive force. Zhou will not be able to make this showing.

**CONCLUSION**

For the reasons above, this Court should grant Defendants' motion to dismiss in its entirety.

Dated: August 13, 2026

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/Todd Dickerson*
TODD DICKERSON
Attorney-in-charge
Texas Bar No. 24118368
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 228-7289 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov
**Attorneys for Defendants**

## CERTIFICATE OF WORD COUNT

This motion complies with the length and contents for Motions and Briefs in Judge Brown's Specific Requirements II.A, as modified by the Court's July 7, 2026 order (ECF 11) because: (1) it contains 9,618 words, excluding the parts of the brief exempted; and (2) it has been prepared in a proportionally spaced typeface (14-point Garamond, with 11-point for footnotes) using Microsoft Word (the same program used to calculate the word count).

*/s/ Todd Dickerson*

## CERTIFICATE OF MEET-AND-CONFER

I certify that I complied with Judge Brown's Standing Order by informing Plaintiffs of the basis of this motion. Specifically, on July 9, 2026, I met and conferred with Plaintiffs' counsel (Marwa Elbially) about the expected basis of this motion via email and notified her of Plaintiffs' right to amend their complaint. Plaintiffs amended their complaint on July 31, 2026. ECF 14. But their amended complaint is still deficient.

*/s/Todd Dickerson*

## CERTIFICATE OF SERVICE

I certify that on August 13, 2026 this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel.

*/s/Todd Dickerson*