**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT UT DALLAS, Et al. | § | |
| *Plaintiffs,* | § | |
| v. | § | Civil Action No. 3:26-cv-1596 |
| ERIC WILLADSEN, et al. | § | |
| *Defendants.* | § | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**INTRODUCTION** ........ 1

**STATEMENT OF FACTS** ........ 2

**ARGUMENT** ........ 10

**A. Plaintiffs are Highly Likely to Succeed on the Merits Because the Defendants' Retaliatory Conduct and Viewpoint Discrimination Violate the First Amendment** ........ 11

*1. Defendants Suspended and Excluded Plaintiffs from Campus in Retaliation for Their Speech* ........ *12*

a. Plaintiffs engaged in First Amendment Protected Activity ........ 12

b. Defendants' adverse actions were substantially motivated against their exercise of the constitutionally protected activity ........ 16

c. Defendants caused Plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. ........ 18

*2. Defendants Suspended, Sanctioned, and Excluded Plaintiffs Due to Viewpoint Discrimination* ........ *19*

**B. Plaintiffs Face a Substantial Threat of Irreparable Harm** ........ 21

**C. The Balance of Equities Favors Plaintiffs** ........ 22

**D. An Injunction Will Serve the Public Interest and Will Not Harm the Defendants.** ........ 22

**E. The Court Should Use Its Discretion Not to Require the Posting of Security** ........ 23

**CONCLUSION** ........ 24

## TABLE OF AUTHORITIES

**Cases**

*Batyukova v. Doege*, 994 F.3d 717, (5th Cir. 2021) ........ 12
*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) ........ 12, 13
*Bode v. Kenner City,* 303 F. Supp. 3d 484, 507 (2018) ........ 21
*Brendle v. City of Hous.*, 177 F. Supp. 2d 553 (N.D. Miss. 2001) ........ 12
*Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966) ........ 13
*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) ........ 11
*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez,* 561 U.S. 661, 681 (2010). ........ 20
*Connick v. Meyers,* 461 U.S. 138 (1983) ........ 13
*Doe v. Univ. of Mass.*, 145 F.4th 158 (1st Cir. 2025) ........ 15
*DSE v. United States*, 169 F.3d 21 (D.C. Cir. 1999) ........ 23
*Duke v. N. Tex. State Univ.*, 469 F.2d 829 (5th Cir. 1972) ........ 11
*Elrod v. Burns*, 427 U.S. 347 (1976) ........ 21
*Flaherty v. Keystone Oaks Sch. Dist., 247 F. Supp. 2d 698 (W.D. Pa. 2003)* ........ 16
*Flash v. Jeff Davis Cnty.,* No. PE:26-CV-00004-DC-DF, 2026 U.S. Dist. LEXIS 337447 ........ 12
*Gay Student Services v. Texas A & M University,* 737 F.2d 1317 ........ 19
*Gbalazeh v. City of Dall.*, Civil Action No. 3:18-CV-0076-N, 2019 U.S. Dist. LEXIS 106456 (N.D. Tex. 2019) ........ 22
*Gonzales v. Burley High Sch.,* No. 4:18-cv-00092-BLW, 2019 U.S. Dist. LEXIS 237894 (D. Idaho 2019) ........ 15
*Hays County Guardian, et al., v. Jerome Supple*, et al., 969 F.2d 111 (5th Cir. 1992) ........ 14
*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) ........ 12
*Healey v. James*, 408 U.S. 169 (1972) ........ 11, 14
*Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855 (8th Cir. 2021) ........ 20
*J.C. ex rel. R.C. v. Beverly Hills Unified School District,* 711 F. Supp. 2d 1094 (C.D. Cal. 2010) ........ 15
*J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011) ........ 16
*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ........ 11
*Lovell v. City of Griffin*, 303 U.S. 444 (1938) ........ 11
*Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 192 (2021). ........ 15
*McDonald v. Longley,* 4 F.4th 229 (2021) ........ 21, 22
*Merriott v. City of Bossier City*, 179 F.4th 393 (5th Cir. 2026) ........ 20
*Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983)* ........ 14
*Rankin v. McPherson,* 483 U.S. 378 (1987) ........ 13
*Rincon v. City of Laredo, No. 24-40168,* 2025 U.S. App. LEXIS 4370 (5th Cir. 2025) ........ 12
*Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004) ........ 14
*RoDa Drilling v. Siegal,* 552 F.3d 1203 (10th Cir. 2009) ........ 23
*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) ........ 19, 20
*Ryan LLC v. FTC,* 739 F. Supp. 3d 496 (2024) ........ 23
*Simms v. District of Columbia,* 872 F. Supp. 2d 90 (D.D.C. 2012) ........ 22
*Steward v. West,* 449 F.2d 324 (5th Cir. 1971) ........ 23
*Terminiello v. Chicago*, 337 U.S. 1 (1949) ........ 13, 25
*Texas v. Becerra*, 623 F. Supp. 3d 696 (2022) ........ 11, 23
*Thompson v. Ragland*, 23 F.4th 1252 (10th Cir. 2022) ........ 20
*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ........ 12, 13, 16

*Truth v. Kent Sch. Dist.*, 542 F.3d 634 (9th Cir. 2008) ..... 21
*Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 641-643, (1994). ..... 19
*West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ..... 11
*Widmar v. Vincent*, 454 U.S. 263 (1981) ..... 14, 15

**Statutes**

42 U.S.C. § 1983 ..... 12
Fed. R. Civ. P. 65(a) ..... 1
Fed. R. Civ. P. 65(c) ..... 23
Tex. Educ. Code § 37.123(b) ..... 17
Tex. Educ. Code § 51.9315 ..... 14

**Other Authorities**

Tex. Exec. Order No. GA-44 ..... 3, 5, 20

**Treatises**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2954 (2d ed. 1995) ..... 24

**Constitutional Provisions**

U.S. Const. amend. I ..... passim
U.S. Const. amend. XIV ..... 11, 25

**Institutional Policies**

Univ. of Tex. Sys. Board of Regents, Rules and Regulations, Rule 40502 ..... 17
UTDSP5001 §C.10 ..... 17
UTDSP5003 §C.9.6(14)(4) ..... 6, 9
UTDSP5003 §C.9.6(15) ..... 6, 8, 9
UTDSP5003 §C.9.6(18) ..... 5, 8, 9

**INTRODUCTION**

Plaintiffs Students for Justice in Palestine at University of Texas Dallas ("SJPUTD"), Chengyang Zhou, Belal Elsiesy, and Nouran Abusaad, move for a preliminary injunction, in accordance with Federal Rule of Civil Procedure 65(a), regarding SJPUTD's one year suspension, Zhou's one-year deferred suspension, Elsiesy's two-year suspension from any University of Texas institution, and Abusaad's trespass notice.

The fall 2026 term at the University of Texas Dallas begins on August 24, 2026, and absent immediate relief, Plaintiffs will suffer irreparable First Amendment injury during the upcoming academic term. Plaintiff SJPUTD is a registered student organization at the University of Texas Dallas ("UTD") dedicated to advocacy for Palestine. Defendants suspended Plaintiff's recognition as a student organization for alleged participation in a commencement ceremony walkout, stripping the organization of its ability to meet on campus, access student activity funds, recruit at orientation events, reserve facilities, or use the University's name. The suspension constitutes retaliation and viewpoint discrimination in violation of the First Amendment.

The actions of the Defendants have curtailed Plaintiffs' pro-Palestine expression and advocacy during a pivotal time when students are returning to campus, organizations are recruiting members, and the academic community is actively participating in the exchange of ideas. Plaintiffs Abusaad and Elsiesy, UTD Alumni are not allowed on campus to assist with recruitment or participate in alumni events. Plaintiff Zhou faces immediate suspension should he participate or engage in any speech or activities that UTD deems unprotected. With classes resuming shortly, Plaintiffs face imminent and irreparable harm. A preliminary injunction is necessary to preserve Plaintiffs' constitutional rights while this Court adjudicates the merits.

**STATEMENT OF FACTS**

Students for Justice in Palestine at UT Dallas ("SJPUTD") has been an active organization on UT Dallas' campus since 2012, regularly engaging in political activities around campus that popularize the Palestinian cause and build the student body's consciousness around the viciousness of the Israeli occupation and the university's complicity in it. Ex. A. *Declaration of Mariam Lafi*.

SJPUTD utilized recognized student organization status to reserve campus spaces for their events and activities through the available university platforms. *Id*. They also relied on their recognized status to participate in student organizational fairs and disseminate literature on designated bulletin-boards. *Id*.

Defendants, members of the UTD administration and the UTD Police Department ("UTDPD"), have consistently coordinated their efforts to suppress SJPUTD's speech. During a peaceful study-in SJPUTD held on December 5, 2024, students sat on the right half of the stairs in UTD's Engineering and Computer Sciences building (ECSW) with flyers taped to their laptops and held banners encouraging students to resist recruitment from weapons manufacturers. ECF No. 14 at 43. It is not unusual for students to sit on the stairs to study and converse. Defendants Losavio and Goodwin, joined by members of the UTDPD, threatened SJPUTD students with arrest alleging policy violations. Despite these threats, students remained in their places until Defendant Martin arrived on scene and conceded to SJPUTD what they already knew: no violation of general rules and regulations was taking place. *Id*.

Defendants hostility towards the December 2024 study-in was part of a pattern and practice of suppression of SJPUTD's political expression. In April 2023, UTD's student government passed a divestment resolution, advocated for by SJPUTD, targeting arms

manufacturers supplying weapons to Israel. ECF No. 14 - 2. In response, Former UTD President, Defendant Benson, wrote the following on UTD letterhead to pro-Israel organizations:

> The resolution called for the University of Texas Investment Management Company (UTIMCO) to divest its holding in certain companies that make military equipment. The overarching rationale was that these companies sell equipment to Israel, a country that the resolution's authors hold in contempt. We have received other letters sharing your concern. Please know that the UT Dallas leadership does *not* agree with this Student Government resolution. ECF No. 14-3 (*emphasis in original*).

This pattern continued later that year, when Defendant Benson issued a public statement on October 17, 2023, expressing "shock, horror, grief and sadness" and "hearts…broken for the people of Israel" with no mention of Palestine, let alone any expressions of empathy for the thousands of Palestinians killed. *Id*.

On November 20, 2023, UTD Administration uprooted the Spirit Rocks from UTD campus after pressure from Texas Hillel Leaders and UT System Board members. Initially, after a student contacted Defendant Smith on October 14, 2023, stating "This is not okay" in regard to the Spirit Rocks being painted with the statement "Zionism = Nazism," Defendant Smith stated, "While I understand various statements can be hurtful, nothing has been identified that is not protected under the First Amendment or is in violation of UTDSP 5001." Ex. B. *Retrograde Article.* However, on November 20, 2023, after the rocks were removed, UTD admin stated that the reason was that the spirit rocks "extended political discourse that had negatively affected people on and off campus." *Id*.

Coordination between the Defendants, UTD Administration and UTDPD, unfolded against the backdrop of directives issued by Texas Governor Abbott. In March 2024, Abbott signed Executive Order GA-44, which directed Texas public universities to review and update free-speech policies to address the alleged sharp rise in antisemitic speech and acts on university campuses, to establish appropriate punishments, as well as ensure that these policies are being

enforced on campuses and that groups such as the Palestine Solidarity Committee and *Students for Justice in Palestine* are disciplined accordingly. ECF No. 14 at 16, 17. Defendant Smith revised the UTD Speech Expression and Assembly Policy to comply with the executive order on June 20, 2024. *Id*.

During the May 2025 Commencement Ceremony, as Defendant Benson delivered his speech to the graduating class, students stood up and demanded that UTD disclose and divest from its investments in companies taking part in the genocide of Palestinians in Gaza. Having voiced their demand, approximately 30 individuals then voluntarily exited the ceremony. President Benson paused his speech for 28 seconds before continuing. ECF No. 14 at 4.

Present during this commencement ceremony walkout was the Speech and Expression Resource Team (SERT) also known as the "Free Speech Team." The Free Speech Team is organized and led by Defendant Smith; volunteers include Defendants Goodwin, Losavio, Winkler and Goodwin. ECF No. 14 at 38, 39. Their first official meeting occurred on May 9, 2024, only eight days after the SJPUTD Gaza Liberation Plaza encampment was torn down and several students and faculty arrested. *Id*. According to the university, the Free Speech Team was established to educate students about their First Amendment rights and compliance with the UTD Student Code of Conduct during protests or expressive activities on campus. *Id.* However, none of the students were aware of the Free-Speech Team's existence until their Fall 2025 disciplinary hearings. *Id.*

As students marched away from Commencement, they chanted various political statements in support of Palestine. Defendant Willadsen can be seen grabbing Palestinian flags and throwing them into the trash. *Id*. Defendant Smith can be heard exclaiming "well this is good

to have" as she records students chanting "Who are we? SJP". ECF No. 14 at 36. The chant continues, "From Dallas to NYC we are all SJP!" *Id*.

As students walked back to their vehicles following the commencement walkout, conversations among members of UTDPD and members of SERT were captured on video. ECF No. 14 at 36. During those conversations, Defendant Losavio, Defendant Goodwin, and UTDPD officers stated that the students were "not welcome back" on campus. *Id*. They labeled the chant "who are we SJP" as a mistake made by the students. *Id.* They also alleged a connection between the students and Hamas, highlighting that they reached out to the governor's office to explore possible actions, the same office that had issued EO GA-44 specifically directing universities to discipline organizations such as Students for Justice in Palestine. *Id.*

Following the walkout, Defendants opened investigations into Plaintiffs Zhou, Elsiesy, and SJPUTD. Dean of Students, Defendant Smith, initiated disciplinary proceedings with the Office of Community Standards and Conduct ("OCSC") stating "Once the ceremony began, several individuals arose from the graduate guest seating and began chanting loudly…At one point during the chant (as seen in a video exhibit) a graduating student, identified as Belal Elsiesy, chanted 'Who are we?' and the crowd responded 'SJP'. This chant went on for approximately one minute (with slight variations)". Ex. C. *Amanda Smith Reporting Form*

On September 2, 2025, UTD OCSC notified then SJPUTD President, Mariam Lafi, that SJPUTD's alleged involvement in the commencement ceremony walkout was a violation of the UT Dallas Student Code of Conduct, specifically:

> UTDSP5003 §C.9.6(18) Disruptive Conduct: Engaging in disorderly, lewd, indecent, inappropriate, loud, or obscene conduct or behavior that interferes with the orderly functioning of the University or interferes with an individual's pursuit of an education.

> UTDSP5003 §C.9.6(15) Violation of General Rules and Regulations.
> Ex. D. *OCSC Sept. 2, 2025 Notice.*

Additionally, in an exchange between Defendant Massey and an OCSC employee on September 12, 2025, they noted that SJPUTD appeared to be the first UTD student organization to face disciplinary hearings. ECF No. 14 at 35.

SJPUTD was notified on October 14, 2025, that following a re-evaluation of the case and its associated allegations, the Disruptive Conduct charge had been replaced with UTDSP5003 §C.9.6(14)(4) Inciting Activities to Disrupt: leading, inciting or participating in activities to disrupt scheduled activities of the University. Ex. E. *OCSC Oct. 14, 2025 Notice.*

On December 11, 2025, the disciplinary hearing took place, and the only witness was Defendant Smith. ECF No. 14 at 35- 6. Defendant Smith maintained the SJPUTD was involved in the commencement protest. *Id*. Her evidence was (1) the chant far from the commencement ceremony lasting approximately one minute "Who are we? SJP" and (2) SJPUTD posting videos of the commencement ceremony walkout on their Instagram. *Id.*

On February 6, 2026, Plaintiff SJPUTD was found responsible for the violation of UTD policies UTDSP5003 §C.9.6(14) Inciting Activities to Disrupt and UTDSP5003 §C.9.6(15) Violation of General Rules and Regulation. The punishment was suspension from the UTD campus for one year. ECF No. 14 at 37. On February 17, 2026, SJPUTD filed an appeal against Leila Gary's decision, asserting that UTD had not sufficiently proven, by a preponderance of the evidence, SJPUTD's involvement in the commencement protests. *Id.* Furthermore, SJPUTD maintained that, even if such participation were substantiated, the students' actions at the commencement ceremony were protected by the First Amendment of the United States Constitution and applicable legislation. *Id.*

Defendant Fitch denied SJPUTD's appeal on March 12, 2026, claiming that "the First Amendment does not protect incitement to disrupt scheduled activities of the University." Ex. F. *Denial of SJPUTD Appeal*.

On March 24, 2026, shortly after the denial of their appeal, Defendant Massey issued a notice to SJPUTD detailing the actual limitations of the suspension. Ex G. *Letter to SJPUTD Detailing Suspension.* The letter noted that they were no longer entitled to the privileges registered student organizations typically enjoy and thus are prohibited from reserving Campus space and using University resources. *Id.* It prohibited SJP from "reserving **or using** on-campus facilities, buildings, or outdoor spaces for meetings, protests, or events" (emphasis added), limiting students' ability to engage in expressive activities in violation of the First Amendment. *Id.*

*Abusaad, Elsiesy, and Zhou*

Plaintiff Zhou is a current student at the University of Texas Dallas and is expected to graduate in December 2026. Plaintiffs Elsiesy and Abusaad, both alumni of UTD, committed to supporting fellow members of the Comet community. ECF No. 14 at 6-7.

On May 16, 2025, Plaintiff Elsiesy stood up in the middle of Defendant Former President Benson's speech and yelled, "President Benson! Your legacy is genocide. The students demand divestment!" ECF No. 14 at 26. Defendant Benson paused for 28 seconds, music played, and then the ceremony continued. *Id*. Approximately 30 individuals, including Plaintiffs Elsiesy and Zhou, peacefully walked out of the ceremony, assembled together in the parking lot behind the ceremony and marched around campus. ECF No. 14 at 4. The walkout did not obstruct any walkways. During the two hours and twelve minutes of Commencement, both the graduating crowd and the audience in attendance could see the stage and hear all the speakers.

As students walked towards their cars, Defendant Losavio, Defendant Goodwin, and UTDPD officers discussed Plaintiff Elsiesy, whom they mocked by his office nickname the "angry guy." ECF No. 14 at 16. Later that evening, Defendant Smith submitted a handwritten Code of Conduct Violation Reporting Form. Exhibit B.

On May 19, 2025, Plaintiffs Elsiesy and Zhou received a notice from Defendant Amanda Smith that information had been received by OCSC that indicated involvement in activities that violate the university code of conduct, specifically:

> UTDSP5003 §C.9.6(18) Disruptive Conduct Engaging in disorderly, lewd, indecent, inappropriate, loud, or obscene conduct or behavior that interferes with the orderly functioning of the University or interferes with an individual's pursuit of an education. Ex. H. *OCSC May 19, 2025 Notices.*

In addition to initiating disciplinary hearings, the notice informed them that Defendant Smith had placed an interim ban from UTD Campus to avoid any potential 'threat' they may cause to university functions. Ex. H. This ban prohibited Elsiesy from attending his own graduation ceremony, which was to take place on May 21, 2025. Elsiesy requested Defendant Smith reconsider, to which she replied. "It was brought to my attention that you called and requested a lift of your campus ban to attend graduation tomorrow. I am denying this request." ECF No. 14 at 29. The interim ban remained in place until August 21, 2025. *Id*.

On August 18, 2025, another letter was issued to Plaintiffs Zhou and Elsiesy requesting a meeting to discuss the charges. Notably, an additional charge was added to this notice:

> UTDSP5003 §C.9.6(15) Violation of General Rules and Regulations, specifically, the regulations defined in the University's Speech & Expression Policy, UTDSP5001, Subsection 10 on Disruption. Ex. I. *OCSC Aug. 18 & Aug. 20 Notices.*

On October 14, 2025, they received yet another notification from OCSC, informing them that following a re-evaluation of the case and its associated allegations, the Disruptive Conduct

charge had been replaced with UTDSP5003 §C.9.6(14)(4) Obstruction of, Interference with, or Attempted or Unauthorized access to Institutional Activities, Facilities, and/or Grounds. Ex. J. *OCSC Oct. 14, 2025 Notice to Students.*

However, on December 1, the charge reverted to the original Disruptive Conduct (§C.9.6(18)) for Plaintiff Zhou. Ex. K. *Official Hearing Notice*; ECF No. 14 at 23. These arbitrary changes and inconsistent allegations hindered Zhou's belief that the proceedings would be fair and protect his rights as a student. *Id.* When brought up to OCSC, Plaintiffs were informed the new charges had never been switched in the system, and due to the 5-day hearing notice policy, Zhou would remain charged with §C.9.6(18) Disruptive Conduct. Ex. L. *Emails with OCSC.* The disciplinary hearing commenced on December 3, 2025. ECF No. 14 at 23.

After the hearing, Zhou was found responsible for §C.9.6(15) Violation of General Rules and Regulations, and §C.9.6(18) Disruptive Conduct: Engaging in disorderly, lewd, indecent, inappropriate, loud, or obscene conduct or behavior that interferes with the orderly functioning of the University. *Id*. Elsiesy was found responsible for §C.9.6(15) Violation of General Rules and Regulations, and §C.9.6(14)(4) Inciting Activities to Disrupt, despite his arguments that none of his actions constituted material or substantial disruption under the guidelines set forth by Texas law, the Regents' Rules, and University policy. *Id.*

Zhou received a sanction of a one-year deferred suspension from UTD, and Elsiesy received a sanction of a two-year suspension from any UT system institutions. *Id.* Both appealed. Defendant Fitch responded on February 16, 2026, affirming the finding of responsibility. Ex. M. *Denial of Student Appeal*. "[T]he preponderance of the evidence supports the conclusion that you participated in the disruption of President Benson's speech at the commencement ceremony when you engaged in chanting that interrupted the speech and caused a delay in the ceremony.

Your actions constituted disruptive conduct as defined by the UTD Student Code of Conduct." *Id.*

Plaintiff Abusaad was not present at the May 16, 2025 commencement ceremony, but was regardless subject to coordinated efforts by Defendants to suppress pro-Palestine speech on the campus. On May 19, 2025, as Abusaad walked the stage during her graduation ceremony, she held up a Palestinian flag bearing the words "DIVEST FROM DEATH." As a Palestinian she wanted to remind those present that many students in Gaza were also supposed to graduate but were killed by Israel. Ex. N. *Declaration of Nouran Abusaad.*

She was escorted off stage and off campus, and at the instructions of Defendant Smith, given a trespass notice by Defendant Clark and told that she was not allowed back onto the UTD Campus. ECF No. 14 at 48. Plaintiff Abusaad cannot participate in UT Dallas alumni activities or campus events. *See* Ex. N. She is restricted from engaging with various student organizations she was active in as a student, such as organizing and judging MIST Dallas, a competition hosted annually at UT Dallas. *Id.* In September 2025, she was invited to speak at a panel concerning political repression and was forced to participate remotely, missing opportunities to directly engage on campus. *Id*. The trespass warning prevents her from exercising the rights and privileges that would otherwise be available to her as a UT Dallas alumna. *Id.*

**ARGUMENT**

To succeed on a motion for a preliminary injunction, Plaintiffs must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not

disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Plaintiffs satisfy each of these requirements.

Likelihood of success and irreparable injury to the movant are the most significant factors. *Texas v. Becerra*, 623 F. Supp. 3d 696, 709 (2022). The Fifth Circuit applies a sliding scale analysis to the four preliminary injunction requirements. *Texas v. United States*, 524 F. Supp. 3d 598, 651 (2021). Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief. *Titlemax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328 (2025).

**A. Plaintiffs are Highly Likely to Succeed on the Merits Because the Defendants' Retaliatory Conduct and Viewpoint Discrimination Violate the First Amendment**

"'Freedom of speech . . . [is] among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action,' *Lovell v. City of Griffin*, 303 U.S. 444, 450, (1938), and the Fourteenth Amendment protects the citizen against all the creatures of the state -- universities not excepted." *Duke v. N. Tex. State Univ.*, 469 F.2d 829, 837 (5th Cir. 1972) *citing West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 637, (1943). "[T[he precedents of [the Supreme] Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'" *Healey v. James*, 408 U.S. 169, 180 (1972).

Plaintiffs are likely to succeed on their First Amendment free speech claims at UTD and face irreparable harm without preliminary relief. Defendants, UTD administration and UTD Police Department, coordinated to suppress pro-Palestinian speech. The First Amendment protects not only the affirmative right to speak, but also the clearly established "right of the

plaintiff[s] to be free from malicious retaliation by public officials …..for the exercise of First Amendment freedoms". *Brendle v. City of Hous.*, 177 F. Supp. 2d 553, 560 (N.D. Miss. 2001). The suspension of SJPUTD, the deferred suspension of Zhou, and the banning from campus of Abusaad and Elsiesy violates that fundamental right.

1. Defendants Suspended and Excluded Plaintiffs from Campus in Retaliation for Their Speech

Under § 1983, students at a public university may state a plausible claim for First Amendment retaliation if they allege that "(1) they were engaged in constitutionally protected activity; (2) the defendant's adverse actions were substantially motivated against their exercise of the constitutionally protected activity and (3) caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Flash v. Jeff Davis Cnty.*, No. PE:26-CV-00004-DC-DF, 2026 LX 337447, at *17 (W.D. Tex. June 17, 2026) *citing Rincon v. City of Laredo*, No. 24-40168, 2025 U.S. App. LEXIS 4370, 2025 WL 603883, at *5 (5th Cir. Feb. 25, 2025) and *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021).

*a. Plaintiffs engaged in First Amendment Protected Activity*

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist*., 393 U.S. 503, 506, (1969). However, the Supreme Court has recognized two major categories of speech that public schools, including public universities, may regulate. First, schools may regulate conduct, which "materially disrupts classwork or involves substantial disorder or invasion of the rights of others". *Tinker*, 393 U.S. at 513. Second, schools "need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, (1988) (*quoting Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685, (1986) ). Clearly,

Plaintiffs statements were not threatening to other students, nor were they "vulgar," "lewd," "indecent," or "plainly offensive." *See Fraser*, 478 U.S. at 685–86. Plaintiffs SJPUTD, Abusaad, Elsiesy, and Zhou engaged in classic first amendment protected political speech regarding matters of public concern. *Connick v. Meyers,* 461 U.S. 138, (1983)(Sup. Ct. held that matters of public concern receive special protection); *Rankin v. McPherson,* 483 U.S. 378 (1987)(Sup. Ct. held that whether a statement addresses public concern is not impacted by its controversial expression).

The issue before this Court is whether the Plaintiffs' speech resulted in a disruption at UTD that meets the Supreme Court's *Tinker* standard for a "material and substantial disruption." The Supreme Court cited the Fifth Circuit decision in *Burnside v. Byars* when it held that:

> In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly, where there is no finding and no showing that engaging in of the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained. *Tinker*, 393 U.S. at 509, *citing Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966).

The purpose of the "material and substantial" test is to prevent free expression from being so restricted that it "could be exercised only in an area that a benevolent government has provided as a safe haven for crackpots." *Tinker*, 393 U.S. at 513. Hence, school officials must show that the regulation of student speech was caused by something more than "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id*. at 509. "Any word spoken in a class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk." *Id. citing Terminiello v. Chicago*, 337 U.S. 1 (1949). Plaintiffs maintain

that holding a flag or a 28-second pause during commencement does not constitute a material or substantial disruption, otherwise, events that may also cause a speaker to pause like a baby crying or a standing ovation would also qualify if the criteria were truly content neutral.

When assessing whether the alleged conduct is material and substantial, courts consider various criteria, such as the location of the incident, the ages of those involved, and the duration of time. "Outdoor grounds of the campus such as the sidewalks and plazas are designated public fora for the speech of university students." *Hays County Guardian, et al., v. Jerome Supple*, et al., 969 F.2d 111 (5th Cir. 1992). The Supreme Court has noted that the "campus of a public university, at least for its students, possesses many characteristics of a public forum." *Id. citing Widmar v. Vincent*, 454 U.S. 263, 267, (1981); *Healy v. James*, 408 U.S. 169, 180, (1972). The UT Dallas commencement ceremony, during which the speech at issue occurred, took place in a common outdoor area designated by state law and campus policy as a "traditional public forum." Tex. Educ. Code § 51.9315.

"In such traditional public forums, the government may never prohibit all expressive activity, and any content-based restrictions will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004) *citing Perry Education Assn. v. Perry Local Educators' Assn*, 460 U.S. 37, 45 (1983). "In addition, the government may enforce time, place, and manner regulations as long as they 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Id.* The Plaintiffs exercised protected speech within a traditional public forum. While the Defendants do have the power to regulate the time, place, and manner of speech, these restrictions are required to be narrowly tailored and content-

neutral. In this instance, however, as explained below, viewpoint discrimination occurred instead.

Age is another important criterion. "While there are undoubtedly exceptions, most university students are at least eighteen years old. As such, they are 'young adults' who, importantly, 'are less impressionable than younger students.'" *Doe v. Univ. of Mass.*, 145 F.4th 158, 170 (1st Cir. 2025) *citing Widmar v. Vincent*, 454 U.S. 263, 274 n.14, (1981). Plaintiffs holding Palestinian flags and demanding that UTD disclose and divest from its investments in companies taking part in the genocide of Palestinians in Gaza is speech of critical importance to young adults of military age.

Finally, the duration of the alleged conduct is a critical factor in the *Tinker* test. Temporary interruption of class time does not, standing alone, establish material and substantial disruption. Here, as in the recent Supreme Court *Mahoney* decision "the alleged disturbance does not meet *Tinker*'s demanding standard." *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 192 (2021). "5 to 10 minutes of an Algebra class 'for just a couple of days' and … some members of the cheerleading team being 'upset' about" a snapchat post "Fuck school fuck softball fuck cheer fuck everything" is not a substantial and material disruption. *Id*.

In *Gonzales et al v. Burley High School et al*, the court found a first amendment violation when students were dismissed from the cheer team for participating in a peaceful sit in for approximately *two minutes* to protest the "bullying, favoritism, and incompetence" of their cheer coach. 4:2018cv00092 - Document 37 (D. Idaho 2019) *citing* "*J.C. ex rel. R.C. v. Beverly Hills Unified School District,* 711 F. Supp. 2d 1094, 1117 (C.D. Cal. 2010) (disruption was "entirely too de minimis as a matter of law" where although five students were pulled out of classes for a morning, school officials had to investigate a video created by one student and distributed to

several other students, and the school had to address concerns of an upset student and parent, there was no evidence that the video "had any ripple effects on class activities or the work of the school."); *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist*., 650 F.3d 915, 929 (3d Cir. 2011) (the inconvenience associated with the student expression at issue, including the principal's meetings related to it, "general rumblings," students talking in class for a few minutes, and some school officials rearranging their schedules to assist the principal did not rise to a substantial disruption); *Flaherty v. Keystone Oaks Sch. Dist*., 247 F. Supp. 2d 698, 704 (W.D. Pa. 2003) ("While [the school principal] believes that he can discipline a student for bringing 'disrespect, negative publicity, [and] negative attention to our school and to our volleyball team,' this is simply not sufficient to rise to the level of 'substantial disruption' under *Tinker*.")."

As the student newspaper, The Retrograde, stated "the decision [to suspend SJPUTD] is a clear violation of students' First Amendment rights to free speech, and it empowers campus administrators to force groups whose political speech it dislikes off campus for minor displays of resistance."[1] The alleged violation "cutting into less than a minute of speaking time in total, would result in a 525,600-minute suspension." The only substantial and material disruption that occurred was Defendants' suppression of Plaintiffs' First Amendment rights.

*b. Defendants' adverse actions were substantially motivated against their exercise of the constitutionally protected activity*

Defendants were substantially motivated by the content of the Plaintiffs' speech. This is evident in their actions: signing letters stating they oppose SJPUTD backed SG resolutions, refusing to recognize the suffering of Palestinians let alone name them in official UTD statements, seizing Palestinian flags and discarding them in the trash as students peacefully

[1] Gregorio Olivares Gutierrez, Maria Shaikh, Tyler Crivella, Sahasra Elaprolu, Aimee Morgan, Ashna Karia, Nandini Singh | Editorial Board, *SJP's suspension is absurd. Don't let it go down quietly*, The Retrograde, April 20, 2026, available at: https://retrogradenews.com/2026/04/20/sjps-suspension-is-absurd-dont-let-it-go-down-quietly/

walked out, claiming that students' mistake was chanting "We are all SJP", maintaining a "Free Speech Team" that targeted Plaintiffs, and reporting Plaintiffs' expressive speech to the Governor's office. *See* ECF No. 14. If the Plaintiffs expressive activities obviously violated the student code of conduct, the charges wouldn't have been changed repeatedly. Clear violations don't require finagling. The sole established violations in this matter are Defendants' infringement of Plaintiffs' First Amendment rights.

Defendants maintain that their disciplinary actions were viewpoint neutral, that the Plaintiffs were not targeted for their speech but rather for alleged "disruptive behavior" namely that the commencement walkout constituted a disruption. During the disciplinary process, Defendants relied heavily on the definition of disruption as outlined in Speech Expression and Assembly—UTDSP5001 Section 10. While the scope of this section is broadened beyond Regent's Rule 40502 to include scheduling conflicts, "Disruptive activities" remain bound by the Regent's Rule 40502 and the Texas Education Code § 37.123(b) where disruption is defined as unauthorized obstruction, seizing buildings, interfering with assemblies through force or threats, or preventing entry/exit without school authorization. It does not describe any of the events that occurred on May 16, 2025.

The University's position that the May 2025 commencement walkout constituted a disruption is particularly notable when viewed alongside the interruptions that occurred during the 2026 commencement ceremony.[2] A review of the commencement ceremony livestream demonstrates that President Moghe's speech was interrupted twice by clapping from the audience.[3] President Moghe's speech was also disrupted for 28 seconds, when technical

---

[2] Video: *UTD Commencement Ceremony Spring 2026*, www.youtube.com/watch?v=cQagEUAOupc
[3] *Id* from 1:04:12–1:04:22 & 1:09:03–1:09:14

difficulties caused the microphone to stop working.[4] This same ceremony experienced yet another disruption during the Keynote Speech. Just one minute into Former Dallas Mayor Tom Leppert's address, a staff member stepped in to inform him of a disruption caused by a weather delay.[5] As a result, the keynote speaker was unable to continue for 20 minutes. Despite this pause, the celebration proceeded and continued through to its conclusion.

*c. Defendants caused Plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.*

Defendants' arrests, trespass warnings, hearings, and sanctions have chilled pro Palestinian speech on the UTD campus. During the April 2026 UTD Student Government Executive Debate President Nominee, David Baker states that despite Student government working with SJP to change "the corrupt disciplinary system," this is not enough. He continues:

> International students every day still fear for their continued education at UT Dallas...The first serious thing that needs to be addressed is the current SJP being suspended for a year by UTD. It's unacceptable that any student should have to worry about what they can and cannot say on campus. Not only does this have effects for our political students, it has effects for every single student on campus. Any student, political or not, is gonna have to ask themselves the question, what should I do or say on campus and what could UTD admin do if they deem my speech or my actions bad for campus?[6]

The student newspaper, The Retrograde recounts statements from multiple students on how their speech has been chilled because of SJPUTD's suspension.[7] Students mentioned being "troubled by the suspension's implications for free expression on campus." *Id*. "It's no secret that UTD has been trying to repress the student movement for Palestine for years now." *Id*. As Baker

---

[4] *Id* from 1:02:57–1:03:25

[5] *Id* from

[6] Ian Davis, *Transcript: the 2026 Student Government executive debate*; Transcribed by Gregorio Olivarez Gutierrez, The Retrograde, April 6, 2006, available at: https://retrogradenews.com/2026/04/06/transcript-the-2026-student-government-executive-debate/

[7] Fareeha Choudhury, Sukriti Sinha, *A deep dive into UTD's suspension of Students for Justice in Palestine*, The Retrograde, March 30, 2026, available at: https://retrogradenews.com/2026/03/30/a-deep-dive-into-utds-suspension-of-students-for-justice-in-palestine/

explained, UTD students fear any form of expressive speech, a direct quelling of the first Amendment.

2. Defendants Suspended, Sanctioned, and Excluded Plaintiffs Due to Viewpoint Discrimination

"Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of the Univ. of Va*., 515 U.S. 819, 828 (1995) *citing Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641-643, (1994). Defendants' suspension of SJPUTD is viewpoint-based because Defendants have explicitly expressed distaste for SJPUTD's speech and activities in the past. Defendants do not agree with the views espoused by SJPUTD as they clearly stated in a letter in April 2023. ECF 14-3. When Defendants discard Palestinian flags, consistently suppress SJPUTD's expressive actions (i.e. painting spirit rocks, chalking messages, organizing encampments, and conducting sit-ins), and follow directives from the Governor to sanction Students for Justice in Palestine, it becomes apparent that they are singling out SJPUTD for its viewpoint. The evidence supports a finding of viewpoint-based enforcement because there is no compelling interest in a "525,600-minute suspension"[8] for an alleged 28 second pause of a graduation ceremony speech.

The suspension of SJPUTD not only strips the organization of carrying out their events on campus, but it also strips the organization of its free speech and right to assembly as well. These sanctions are a direct violation of SJPUTD's "right to join with others in the advocacy of beliefs or the exercise of other rights protected by the First Amendment." *Gay Student Services v. Texas A & M University*, 737 F.2d 1317 (5th Cir. 1984).

The University of Texas Dallas' student organization program constitutes a limited public forum. When a public university opens its facilities to student organizations, it creates a limited

[8] *See Supra* FN 1.

public forum in which viewpoint discrimination is prohibited. *Rosenberger*, 515 U.S. at 819. The same ground rules must govern both speech and association challenges in the limited-public-forum context. *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 681 (2010).

In a limited public forum, the government may restrict speech based on content if the restriction: (1) does not discriminate against speech on the basis of viewpoint; and (2) is reasonable in light of the purpose served by the forum. *Merriott v. City of Bossier City*, 179 F.4th 393 (5th Cir. 2026). Viewpoint discrimination is an egregious form of content discrimination that is presumptively unconstitutional. *Id*.

Defendants cannot avoid this conclusion by pointing to Plaintiff's ability to meet off campus or communicate through private channels. Denial of recognition burdens First Amendment rights when it denies a student group access to campus facilities, communication channels, and other attendant benefits of recognition. *Thompson v. Ragland*, 23 F.4th 1252, 1257 (10th Cir. 2022). The constitutional injury is the exclusion from the University-created forum on unequal terms, not merely the total elimination of every possible means of communication.

Plaintiffs are not aware of any other student organization that was ever suspended at UTD. This selective exclusion based on Plaintiff's viewpoint violates the First Amendment. Even if Defendants characterize the suspension as enforcement of a facially neutral conduct rule, a nondiscrimination policy or comparable rule that is viewpoint neutral on its face may still be unconstitutional if not applied uniformly. *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 863 (8th Cir. 2021). The government must abstain from regulating speech when the specific motivating ideology, opinion, or perspective of the speaker is the rationale for the restriction. *Id*.

Defendants may rely on cases upholding neutral enforcement of student-conduct or nondiscrimination policies, but those cases involved genuinely uniform application of rules to conduct, not selective punishment of organizations because of their viewpoint. *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 650 (9th Cir. 2008). The distinction is dispositive: SJPUTD does not claim immunity from neutral conduct rules. SJPUTD challenges the suspension because the record shows it was imposed based on Plaintiffs' advocacy for Palestine and enforcement of the Governor's Executive Order GA-44, not on uniformly applied criteria.

**B. Plaintiffs Face a Substantial Threat of Irreparable Harm**

The Supreme Court established in *Elrod v. Burns* that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347 (1976). Injunctions protecting First Amendment freedoms are always in the public interest. *McDonald v. Longley*, 4 F.4th 229, 255 (2021). Plaintiffs' suspension and exclusion from UTD campus inflicts an ongoing constitutional injury. Each day Plaintiffs remain excluded from campus, they cannot recruit members for SJPUTD, access facilities, participate in campus events, and distribute literature. With the fall semester beginning on August 24, 2026, the harm is particularly acute. The first weeks of the academic year are critical for student organization recruitment and programming. Missing this window causes irreparable damage to Plaintiff SJPUTD's ability to build membership, establish presence and execute planned activities. These harms cannot be remedied through money damages. The Supreme Court has recognized that violations of First Amendment rights constitute irreparable injury precisely because such freedoms cannot be adequately valued or restored through monetary compensation alone. *Bode v. Kenner City*, 303 F. Supp. 3d 484, 507 (2018).

**C. The Balance of Equities Favors Plaintiffs**

The balance of equities weighs heavily in plaintiffs' favor where the only harm to the defendant is the inability to extract mandatory dues from the plaintiffs in violation of the First Amendment, which is really no harm at all. *McDonald v. Longley*, 4 F.4th 229, 255 (2021). Here, reinstating Plaintiff pending final resolution of this case imposes no meaningful burden on Defendants. The University previously recognized Plaintiff and provided the benefits at issue. Temporarily restoring that status quo pending adjudication does not disrupt university operations, compromise safety, or impose financial costs. In contrast, denying the preliminary injunction inflicts severe and irreparable harm on Plaintiff's constitutional rights during the critical opening weeks of the semester. The equities plainly favor preserving Plaintiff's First Amendment freedoms while this Court resolves the merits. Defendants cannot articulate cognizable harm from a temporary reinstatement. Any administrative inconvenience pales in comparison to the silencing of Plaintiff's protected expression.

**D. An Injunction Will Serve the Public Interest and Will Not Harm the Defendants.**

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Gbalazeh v. City of Dall.*, Civil Action No. 3:18-CV-0076-N, 2019 U.S. Dist. LEXIS 106456, at *5 (N.D. Tex. June 25, 2019) *quoting Simms v. District of Columbia*, 872 F. Supp. 2d 90,105 (D.D.C. 2012). The public has a strong interest in the protection of First Amendment liberties. Granting the preliminary injunction vindicates the public interest in viewpoint-neutral administration of government forums. It ensures that students and student organizations are not silenced based on their political opinions. It preserves the robust exchange of ideas that characterizes a healthy academic community. Conversely, allowing the suspension to continue during litigation sends a message that viewpoint discrimination is permissible so long as

litigation is protracted. This harms not only Plaintiffs but all students and community members who benefit from exposure to diverse perspectives.

The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable injury until the court renders a decision on the merits. *Texas v. Becerra*, 623 F. Supp. 3d 696, 709 (2022). Granting preliminary relief serves the public interest by maintaining the constitutional status quo while the merits are adjudicated. Nor would an injunction harm the Defendants.

**E. The Court Should Use Its Discretion Not to Require the Posting of Security**

Federal Rule of Civil Procedure 65(c) normally requires the moving party to post security to protect the other party from any financial harm likely to be caused by a temporary injunction if that party is later found to have been wrongfully enjoined. Rule 65(c), however, "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), including the discretion to require no bond at all. *Steward v. West*, 449 F.2d 324, 325 (5th Cir. 1971) (finding that no injunction bond need be posted when "it is very unlikely that the defendant will suffer any harm"); *RoDa Drilling v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) ("[T]rial courts have wide discretion under Rule 65(c) in determining whether to require security....").

The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. *Ryan LLC v. FTC*, 739 F. Supp. 3d 496, 507 (2024). The Court should use its considerable discretion to find that no security is required in this case because UTD will suffer no financial harm and Plaintiffs are likely to succeed on the merits. First, the likelihood of Defendants suffering any harm from an improperly issued injunction requiring the County to comply with federal law is non-existent.

*See, e.g., Gaubatz*, 667 F. Supp. 2d at 81 (requiring no bond where the defendant would not be substantially injured by the issuance of an injunction); 11A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2954 (2d ed.) ("[T]he court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant.").

The narrowly tailored injunction requested in this Motion would not preclude UTD from reinstating the suspension following the conclusion of litigation. Furthermore, no financial loss or other non-economic detriment would arise from the issuance of this preliminary injunction. Finally, Plaintiffs are overwhelmingly likely to succeed on the merits. The outcome of any future trial, if necessary, is likely to reaffirm the basic principles that have been repeatedly reaffirmed by the Supreme Court, the Fifth Circuit, and federal and state courts across the country.

## CONCLUSION

The constitutional principles at issue in this case are well-established. The Fourteenth Amendment does not permit a State to make criminal the peaceful expression of unpopular views. "[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech . . . is . . . protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. . . . There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community

groups." *Terminiello v. Chicago*, 337 U.S. 1, 4-5 (1949) The temporary inconvenience and annoyance of Defendants does not justify the suppression of Plaintiffs speech.

Plaintiffs respectfully request that this Court:

1. Grant this Motion for Preliminary Injunction;
2. Order Defendants to immediately reinstate SJPUTD as a recognized student organization with full access to all benefits, privileges, and rights afforded to recognized student organizations;
3. Order that such reinstatement remain in effect pending final adjudication of this action on the merits;
4. Order Defendants to rescind Elsiesy's suspension from enrolling in any UT University or setting foot on a UT campus;
5. Order Defendants to rescind Zhou's deferred suspension from the UTD;
6. Order Defendants to rescind Abusaad's trespass notice allowing them to resume activities on campus such as, but not limited to, attending alumni events, attending graduations, and being present on campus;
7. Waive or set bond in a nominal amount;
8. Award Plaintiff its costs and attorneys' fees; and
9. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/Marwa Elbially
Marwa Elbially, Esq.
**ELBIALLY LAW OFFICE, PLLC**
704 East 15th Street, Suite 204
Plano, TX 75074
T: 972.423.7330
E: info@elbiallylaw.com
TX Bar No. 24090089