**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT UT DALLAS, NOURAN ABUSAAD, CASEY CHOI, BELAL ELSEISY, MOUSA NAJJAR, and CHENGYANG ZHOU, | § | |
| *Plaintiffs,* | § | |
| V. | § | Civil Action No. 3:26-cv-1596 |
| ERIC WILLADSEN, RICHARD BENSON, AMANDA SMITH, RAFEAL MARTIN, GENE FITCH, TRICIA LOSAVIO, KIMBERLY WINKLER, DAN GOODWIN, SHAQ MASSEY, PRABHAS MOGHE, BRENT TOURANGEAU, DAVID WAWAK, ADAM PERRY, DAVID CHANG, SOMER CLARK, ROD BISHOP, KARL ZUBER, ROBERT ALVARADO, and CHARLES SCOTT; | § | |
| *Defendants.* | § | |

**SECOND AMENDED COMPLAINT**

The University of Texas Dallas ("UTD"), a state-funded public university violated the United States Constitution and the Texas Constitution by engaging in viewpoint discrimination in support of the state of Israel and suppression of pro-Palestine student activism, using excessive force, arrests, and malicious criminal prosecutions and student disciplinary proceedings.

Plaintiffs are current and former students of UTD, as well as a student organization, all of whom suffered grave harm due to the UTD administration's surveillance and repression. UTD suppression of pro-Palestine speech pre-dates the ongoing genocide in Gaza, however, it has

escalated in recent years, culminating in the suspension of the only Palestine-advocacy student organization. Students for Justice in Palestine UTD ("SJPUTD"), along with Casey Choi, Mousa Najjar, Nouran Abusaad, Belal Elseisy, and Chengyang Zhou, bring this civil action to seek remedy for damages that were directly caused by Defendants' violations of their constitutional rights.

**INTRODUCTION**

Student activism and protest on college campuses is a cornerstone of political engagement and the living expression of the First Amendment. From the Harvard Butter Rebellion of 1766, when students sought adequate meals, to the student protests against the Vietnam War which contributed to the passage of the 26th Amendment extending the right to vote to eighteen-year-olds, to the student protests that drove universities to divest from apartheid South Africa, hastening the regime's collapse, college campuses have been crucibles of moral urgency and catalysts for lasting change both domestically and globally.

This Complaint sets forth a deliberate and targeted attempt by the University of Texas at Dallas ("UTD") administration to repress student expression on campus, specifically as it relates to pro-Palestine speech. The administration of UTD including but not limited to the UTD Dean of Students Amanda Smith, Vice President of Student Affairs Gene Fitch, former UTD President Richard Benson, current UTD President Prabhas V. Moghe, and the Chief of UTD Police Brent Tourangeau, Lieutenant Eric Willadsen, have each in their personal and official capacities contributed to the systematic intimidation and repression of students for exercising their First Amendment Rights of Free Speech and Assembly in support of Palestine.

UTD has coordinated with the University of Texas Dallas Police Department to systematically suppress any pro-Palestinian speech on campus. This effort has resulted in the

arrests, criminal prosecutions, and disciplinary proceedings of the Plaintiffs as set forth in this Complaint. This coordinated targeting is unlawful and a violation of the Plaintiffs' First Amendment rights to Free Speech and Assembly.

The UTD administration has not been neutral on political issues concerning Palestine. On April 4, 2023, the UTD student government passed a pro- Palestine divestment resolution S.R. 2022-40 or "Divestment from Militarism," which recommended that UTD divest its shares in the University of Texas Investment Management Company, or UTIMCO, which manages UTD's investments and endowment funds. The five companies of interest were Raytheon Technologies, Lockheed Martin, Boeing, Northrop Grumman and General Dynamics, which manufacture weapons and technology for various countries, including Israel. UTD President Benson immediately sent a letter, on April 10, 2023, to pro-Israel off campus organizations regarding the resolution stating that "[t]he overarching rationale [of the resolution] was that these companies sell equipment to Israel, a country that the resolution's authors hold in contempt… Please know that the UT Dallas leadership **does not agree** with this Student Government resolution." (emphasis added).

On October 17, 2023, UTD administration issued a public statement addressed to the "UT Dallas Community" which expressed "shock, horror, grief and sadness" and "hearts …broken for the people of Israel and for all those affected by the violence and inhumanity of Hamas." The statement made no mention of Palestine, let alone any expressions of empathy for the thousands of Palestinians killed. Moreover, UTD administration's thousands of public statements dating back to August 25, 2000, deal exclusively with campus events and UTD professor and student achievements. These statements do not address matters relating to international affairs or political

concern other than speakers being invited to discuss a topic of interest on UTD campus. The only other off campus incident addressed is the shooting at Northern Illinois University in 2008.

On May 16, 2025, Plaintiffs Belal Elseisy and Chengyang Zhou, along with several other students, participated in a lawful and peaceful walkout in protest of UTD's refusal to disclose their investments in, as well as financially divest from, companies providing material support to and profiting from the genocide of the Palestinian people.

This walk-out took place at the UTD Spring 2025 Commencement Ceremony, which was held outdoors, during President Richard C. Benson's speech to the graduating class. Plaintiff Elseisy stood up, demanded UTD disclose and divest from their investments in companies taking part in the genocide in Gaza, then voluntarily exited the ceremony. Elseisy, who was sitting with his fellow graduates, never attempted to rush the platform, usurp the podium, steal the microphone, use a bullhorn, or amplify his voice artificially in any way. Further Elseisy did not remain in place after standing up, he immediately began walking away from the graduation ceremony. This walkout led to a 28 second pause of President Benson's speech, which immediately resumed as Elseisy and other students voluntarily walked out. On their way out of the commencement ceremony, Elseisy and other students were confronted by several UTD police officers, who demanded they vacate UTD's grounds and followed them for approximately 30 minutes as they walked to the parking lot. As the students were walking away, Defendant Lieutenant Eric Willadsen of the UTD Police Department, unprovoked, snatched two Palestinian flags and threw them into a trash can.

After Plaintiff Zhou had walked hundreds of feet from the graduation commencement, he blew his bugle. Defendant Willadsen, who was between ten to twentyfeet away from Zhou, rapidly charged towards him. Zhou began walking away from both the commencement and the charging

officer, at which point, Defendant Willadsen, lunged at Zhou, yanked him backwards by the backpack he had over his shoulders, and dragged him backwards.

Zhou did not resist. Zhou did not brandish any weapons. Zhou did not attempt to harm Defendant Willadsen in any way. Nonetheless, Defendant Willadsen coiled his forearm around Zhou's neck, squeezing into a forceful chokehold, preventing Zhou from breathing.. After releasing Zhou from the chokehold, Defendant Willadsen ripped Zhou's bugle from his hand. Afterwards, Zhou reported feeling as though the wind had been physically knocked out of him because of the force that Lt. Willadsen applied to his neck and chest.

As the students headed toward their cars, multiple UTD police officers and UTD Administration members, including Defendant Losavio and Defendant Goodwin, were overheard saying the students are "not welcome back." Defendants Goodwin and Losavio identified Plaintiff Elseisy, noting his office nickname "angry guy". Defendants then discussed the chant, "who are we, SJP", which they alleged demonstrates connections to Hamas. They had forwarded the information showing the supposed Hamas link to the governor's office to find out if anything could be done from their end.

Two weeks later, on May 30, 2025, Defendant Willadsen *personally* appeared, in plainclothes, at Zhou's apartment to execute an arrest warrant for felony assault on a peace officer as well as a misdemeanor disruption of a meeting. The alleged victim of the felony assault was Defendant Willadsen. He claimed that when Zhou played his bugle in open air, , the sound emanating was an assault on Defendant Willadsen's ears which caused hearing loss and tinnitus. Defendant Willadsen attached hearing records from Callier Center for Communication Disorders in Richardson, Texas. The Dallas County District Attorney's Office (DA's Office) rejected the case, without attempting to present it to the grand jury. Additionally, on August 31, 2026, the

DA's Office filed a dismissal "in the interest of justice" in the misdemeanor case. Zhou's case was scheduled for a jury trial on September 1, 2026.

Suppression of pro-Palestine student speech at the University of Texas at Dallas (UTD) surpassed any reasonable means when Defendant Willadsen decided to chase down an unarmed student and choke him out, and then had the audacity to claim that Defendant Willadsen himself was the victim of a violent assault. The charges placed on Zhou were designed to provide cover for Willadsen's excessive use of force. These actions are not isolated incidents but represent a broader pattern of active pro Palestine speech suppression by the UTD administration. The use of arrests, malicious prosecution, and intimidation to silence any type of protected speech on campus is an affront to the First Amendment. Plaintiffs file this complaint to demand the restoration of their rights to First Amendment protected advocacy.

**PARTIES**

1. Plaintiff Students for Justice in Palestine at the University of Texas Dallas ("SJPUTD"), is a student organization that promotes educational awareness about the history of Palestine and encourages UTD to disclose their investments in, as well as financially divest from, companies that are currently providing material support to and profiting off the ongoing genocide of the Palestinian people. SJPUTD's political speech and expression has been and continues to be suppressed by UTD through surveillance, intimidation, disciplinary proceedings, and suspension.

2. Plaintiff Chengyang Zhou lives in Collin County, Texas. He is a Chinese American student at the University of Texas at Dallas, expected to graduate in December 2026. His pro-Palestinian political expression, association, and commencement walkout was suppressed by UTD through police brutality, intimidation, arrest, and disciplinary proceedings.

3. Plaintiff Belal Elseisy lives in Travis County, working as a Software Engineer. He is an Egyptian American graduate of the University of Texas at Dallas, and his pro-Palestinian political expression, association, and commencement walkout was suppressed by UTD through a ban from his graduation ceremony, targeted arrest, and disciplinary proceedings.

4. Plaintiff Nouran Abusaad lives in Collin County, Texas. She is a Palestinian American graduate of the University of Texas at Dallas, and her pro-Palestinian political expression was suppressed by UTD through arrest, disciplinary proceedings, and other forms of intimidation.

5. Plaintiff Mousa Najjar lives in Collin County, Texas. He is a Palestinian American graduate of the University of Texas at Dallas, and his pro-Palestinian political expression was suppressed by UTD through disciplinary proceedings and multiple arrests.

6. Plaintiff Casey Choi resides in Houston, Texas. He is a Korean-Mexican-American graduate of the University of Texas at Dallas, and his pro-Palestinian political expression was suppressed by UTD through disciplinary proceedings and multiple arrests.

7. Defendant Richard C. Benson, also known as "Dick" Benson, is currently a Professor of Mechanical Engineering at the University of Texas at Dallas. He previously served as President of the University of Texas at Dallas from 2016 through 2025. As President, Benson was responsible for overseeing university operations, administration, institutional policy implementation, campus safety oversight, and executive leadership of the University. Former President Benson served as UTD President during time periods relevant to this complaint and can be served, in both his individual and official capacity, at: The University of Texas at Dallas, 800 W. Campbell Road, Richardson, Texas 75080.

8. Defendant Gene Fitch serves as Vice President for Student Affairs at the University of Texas at Dallas. His responsibilities include oversight of student affairs operations, student conduct, student engagement, and student support services. Gene Fitch served in this role during time periods relevant to this Complaint and may be served, in both his individual and official capacity, at the Student Services Building Addition (SSA) of the University of Texas at Dallas: 820 Franklyn Jenifer Dr, SSA 4th Floor, Room 14.120, Richardson, TX 75080

9. Defendant Rafael Martin serves as Interim Vice President for Research at the University of Texas at Dallas. His responsibilities include oversight of research operations, institutional research initiatives, and university research administration. Defendant Martin served in this role during time periods relevant to this Complaint and may be served, in both his individual and official capacity, at: The University of Texas at Dallas Administration Building (AD): 841 N Loop Rd, Second Floor, Room 2.208, Richardson, TX 75080

10. Defendant Amanda Smith serves as the Associate Vice President and Dean of Students at the University of Texas at Dallas and was employed by the University during time periods relevant to this Complaint. She has served in her role as Associate Vice President and Dean of Students since July 2016. Her duties and responsibilities included matters relating to university administration and/or student affairs. Defendant Smith may be served, in both her individual and official capacity, at: The University of Texas at Dallas Student Services Building (SSB), 820 Franklyn Jenifer Dr, 4th floor, Room 4.400, Richardson, TX 75080

11. Defendant Prabhas V. Moghe was announced as the new President of the University of Texas Dallas in May 2025. He previously served as the Executive Vice President for Academic Affairs at Rutgers University. His duties and responsibilities included executive oversight and administration relating to academic and research affairs within the UT System. Defendant Moghe

may be served at: The University of Texas at Dallas, Office of the President: 800 West Campbell Road Richardson, Texas 75080-3021

12. Defendant Tricia Losavio serves under the office of the Dean of Students as the Associate Dean of Health and Wellness Initiatives. She was employed by the University of Texas at Dallas during the time periods relevant to this Complaint. Defendant Losavio may be served, in both his individual and official capacity, at: The University of Texas at Dallas Student Services Building (SSB), 820 Franklyn Jenifer Dr, 4th floor, Room 4.400, Richardson, TX 75080

13. Defendant Shaq Massey serves as the Director of the Officer of Community Standards and Conduct at the University of Texas at Dallas. He was employed by The University of Texas at Dallas during the time periods relevant to this Complaint. Defendant Massey may be served, in both his individual and official capacity, at: The University of Texas at Dallas Student Services Building (SSB), 820 Franklyn Jenifer Dr, 2nd floor, Room 2.311, Richardson, TX 75080

14. Defendant Dan Goodwin was recently promoted in January to the position of Senior Director of the Student Union & Student Union Programs. He previously served as the Director of Student Union and Student Life Programs from 2016 to 2026. In these positions, he leads the management of affairs conducted within the Student Union, a site of many student activities and programs. He was employed by the University of Texas at Dallas during time periods relevant to this Complaint. Defendant Goodwin may be served, in both his individual and official capacity, at: The University of Texas at Dallas Student Union (SU), 800 W. Campbell Road, 2nd Floor, SU 2.401, Richardson, Texas 75080.

15. Defendant Kimberly Winkler serves under the office of the Dean of Students as the Associate Dean for Student Engagement Initiatives. She was employed by the University of Texas at Dallas during the time periods relevant to this Complaint. Defendant Winkler may be

served, in both his individual and official capacity, at: The University of Texas at Dallas Student Services Building (SSB), 820 Franklyn Jenifer Dr, 4th floor, Room 4.400, Richardson, TX 75080.

16. Defendant Eric Willadsen served as a Lieutenant with the University of Texas Dallas Police Department during time periods relevant to this Complaint. After serving as a Richardson Police Officer for 25 years, he retired and joined the University of Texas Dallas Police Department around July 2024. His responsibilities include supervising criminal investigations, overseeing investigative personnel, coordinating investigative enforcement activities, and managing criminal investigative operations on behalf of the University. Defendant Willadsen may be served, in both his individual and official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

17. Defendant Brent Tourangeau served as Chief of Police for the University of Texas Dallas Police Department during time periods relevant to this Complaint. He began his employment with the University of Texas Dallas Police Department in February 2014. His responsibilities include oversight of campus law enforcement operations, officer supervision, policy enforcement, and campus public safety. Before joining the University of Texas Dallas Police Department, Defendant Tourangeau worked for the Richardson Police Department for approximately 28 years and retired as Captain of the Patrol Division. Defendant Tourangeau may be served, in both his individual and official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

18. Defendant David Wawak served as a Detective with the University of Texas Dallas Police Department during time periods relevant to this Complaint and, upon information and belief, has been employed with the University of Texas Dallas Police Department since 2017. His

responsibilities include criminal investigations, evidence collection, witness interviews, and investigative enforcement activities on behalf of the University. Defendant Wawak may be served, in both his individual and official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

19. Defendant Adam Perry served as Captain and Commander of Special Operations for the University of Texas Dallas Police Department during time periods relevant to this Complaint. In this role, Defendant Perry oversaw both the Criminal Investigations Division ("CID") and the Support Services Division. The Criminal Investigations Division encompassed the Investigative Division, Records Division, and Recruiting and Background Unit. Before joining UT Dallas, Defendant Perry retired in February 2020 after serving for 24 years with the Richardson Police Department. He was then employed by the University of Texas at Dallas as Lieutenant of the Criminal Investigations Division. Defendant Perry may be served, in both his individual and official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

20. Defendant David Chang is an officer with the University of Texas Dallas Police Department specializing in University Affairs. He was previously employed as a Patrol Officer with the University of Texas Dallas Police Department during time periods relevant to this Complaint. Defendant Chang may be served, in both his individual and official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

21. Defendant Somer Clark is the lieutenant over the Patrol Division for the University of Texas at Dallas Police Department. She was employed by the University of Texas Dallas Police Department during time periods relevant to this Complaint. Defendant Clark may be served, in her

official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

22. Defendant Rob Bishop served as a Detective Sergeant with the University of Texas Dallas Police Department during time periods relevant to this Complaint. Upon information and belief, Defendant Bishop was employed with the University of Texas Dallas Police Department beginning in approximately 2016 and retired in 2026. Defendant Bishop may be served, in his official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

23. Defendant Karl Zuber served as Captain and Commander of the Field Operations Division for the University of Texas Dallas Police Department during time periods relevant to this Complaint. He began his career with the University of Texas Dallas Police Department in approximately June 2006. His responsibilities included oversight of patrol operations, officer supervision, field enforcement activities, and campus public safety operations on behalf of the University. Defendant Zuber may be served, in his official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

24. Defendant Robert Alvarado was employed as a police officer with the Patrol Unit of the University of Texas Dallas Police Department during time periods relevant to this Complaint. Upon information and belief, Defendant Alvarado left the University of Texas Dallas and began employment with the Collin College Police Department in approximately September 2025. Defendant Alvarado may be served, in his official capacity, at: Collin College Police Department, 4800 Preston Park Boulevard, Plano, Texas 75093.

25. Defendant Charles Scott is an officer with the University of Texas Dallas Police Department. He served as a Patrol Officer with the University of Texas Dallas Police Department

during time periods relevant to this Complaint. Defendant Charles may be served, in his official capacity, at: UT Dallas Police Department, 3020 Waterview Parkway, Richardson, Texas 75080.

## JURY DEMAND

26. Plaintiffs hereby demand a trial by jury.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution. This Court also has jurisdiction under 28 U.S.C. §1343 because the action seeks to address the deprivation of civil rights under 42 U.S.C. § 1983.

28. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the events that give rise to this action occurred in this district.

## STATEMENT OF FACTS

***Chengyang Zhou***

29. Plaintiff Chengyang Zhou is a Chinese American student pursing a Bachelor of Art in History at the University of Texas Dallas.

30. Zhou's political engagement is motivated by his own family's history. His family and people struggled against Japanese invasion and occupation, before and during World War II (1931-1945). To Zhou, the genocide in Gaza today mirrors the violence the Chinese faced during Japan's occupation–where approximately 20 million Chinese were murdered over the course of 14 years.

31. On May 16, 2025, Zhou was seated in the audience of the UTD commencement ceremony, far from the stage, which was separated by a line of mature trees and graduate seating.

32. As UTD President Benson commenced his speech, Zhou observed graduates walking out of the ceremony in support of Palestine.

33. Given his longstanding commitment to advocating for Palestinian liberation which animated his desire for UTD's administration to reconsider its position regarding the Israeli occupation, Zhou joined graduates as they walked away from the ceremony. He stood up and walked out of the commencement ceremony with the graduating students.

34. Zhou had brought with him a backpack and a small bugle to the graduation. After walking out of the graduation completely, far from the last row of audience members, Zhou blew into the bugle on the street. While the bugle did emit some sound, it did not produce a loud or disruptive noise. Zhou's use of the instrument was intended to pay homage to his culture and roots. The Chinese bugle symbolizes loyalty, unity, and revolutionary spirit.





35. Despite the distance from the convocation, Defendant Willadsen sensed an opportunity and lunged towards Zhou, who was walking away from him. Defendant Willadsen pulled Zhou, who was walking in the other direction, using the backpack Zhou had looped around both shoulders, to yank him backwards, and then proceeded to wrap his forearm around Zhou's neck and apply a pressured chokehold.






36. Zhou had not been given a lawful command to stop. He was not resisting. He did not brandish any weapons. He was not cursing. He was, put simply, existing in a group of like-minded individuals. And for that, he was violently choked.

37. Zhou could not breathe. He could not speak. He felt a wave of pain and panic. His attempt to verbalize it was futile, because his vocal cords were constrained to the degree that he was unable to make any sound.

38. The University of Texas System Office of the Director of Police Policy (UT ODP) and Procedure manual on "Use of Force" classifies chokeholds as "lethal/deadly force." While the policy delineates narrowly tailored circumstances justifying the use of deadly force, "only when the officer reasonably believes that the action is in defense of human life, including the officer's own life, or in defense of any person n imminent danger of serious bodily injury or death." Nonetheless, the policy categorically prohibits the use of chokeholds. UT ODOP Policy 601 specifically states, "Chokeholds, vascular neck restraints, or similar techniques are prohibited." In short, there is no circumstance that would justify Defendant Willadsen's use of the chokehold.

39. Multiple officers rushed forward, but none intervened to prevent Willadsen's unlawful use of force, as ODOP Policy 601 requires. At the conclusion of the incident Officer David Chang pushed multiple students, including Zhou, to continue moving.

40. After a few moments of collecting his breath, Zhou moved as far to the front of the walkout as possible, extremely traumatized by the UTD police and UTD administrators. Defendants Amanda Smith, Tricia Losavio and Dan Goodwin were walking alongside the UTD police when Zhou was choked and took no action to prevent or address the incident.

41. UTD Officers Willadsen, Clark, Perry, Chang, Tennyson, and Johnson continued to follow the students relentlessly though they were far from the graduation ceremony. Throughout this time, several Defendants pushed the students and yelled at them until the students were at the parking lot.

42. It should be noted that Officer Willadsen either did not have his body worn camera activated while he choked Zhou out, or he tampered with the recording to delete evidence of that the same.

43. Defendant Willadsen was equipped with a UTDPD-issued body worn camera that day and did eventually activate his body worn recording, but long after his egregious misconduct had occurred, in contravention to OPOD Policy 413 which governs the operation activation of body worn cameras and the preservation of their footage.

44. Defendant Willadsen's failure to activate his body worn camera also provided him creative license to fabricate his own altered reality of the events which transpired that day in the offense report and narrative he authored, which was carefully crafted to justify his unlawful use of force.

45. Unbeknownst to Defendant Willadsen, his blatant fabrications were recorded by multiple angles, and the false statements woven through the probable cause affidavit would have risen to the level of a *Franks* motion if the Dallas County District Attorney's Office had not rejected the felony Assault on an Officer offense.

46. Additionally, UTD administrators, Defendants Amanda Smith, Tricia Losavio, and Dan Goodwin, watched and recorded the harassment of the students without any attempt to de-escalate the police conduct and disproportionate use of force.

47. While the students were walking to their cars, several UTD police officers, Defendant Losavio, and Defendant Goodwin can be heard saying the students are "not welcome back" on campus. Defendants Goodwin and Losavio identified Plaintiff Elseisy, noting that they commonly referred to him as the "angry guy" in the office. They indicated that the error committed by the students was chanting "who are we - SJP". They also discussed the alleged connection between the students and Hamas, highlighting that they reached out to the governor's office to explore possible actions. This may have been a reference to Governor Abbott's Executive Order GA-44.

48. On June 20, 2024, UTD revised their Speech Expression and Assembly Policy to comply with Governor Abbott's Executive Order GA-44, which called on Texas public universities to:

> • Review and update free speech policies to address the sharp rise in antisemitic speech and acts on university campuses and establish appropriate punishments, including expulsion from the institution.
>
> • Ensure that these policies are being enforced on campuses and that groups such as the Palestine Solidarity Committee and **Students for Justice in Palestine** are disciplined for violating these policies.

• Include the definition of antisemitism, adopted by the State of Texas in Section 448.001(2) of the Texas Government Code, in university free speech policies to guide university personnel and students on what constitutes antisemitic speech.

49. Shortly after commencement, Dean of Students Amanda Smith filed a report to initiate disciplinary proceedings. The report stated the following:

> University Commencement was an event that took place on May 16th, 2025, and began around 7:00pm. For the event, a large stage and production equipment are constructed on the University Circle. A party consisting of the University President, the president's cabinet and deans, and guest speakers are situated on the stage and thousands of chairs are set out around the circle for graduates and guests. Once the ceremony began, several individuals arose from the graduate guest seating and began chanting loudly. These individuals were asked to leave the area by the Dean of Students staff and UT Dallas Police. As the individuals were ushered away from the commencement area, several of them assembled in a group, **some with flags,** and began a march around campus while the chanting continued. At one point during the chant (as seen in a video exhibit) a graduating student, identified as Belal Elsiesy, **chanted "Who are we?" and the crowd responded "SJP"**. This chant went on for approximately a minute (with slight variations). **(emphasis added)**

50. On May 19, Zhou received a letter from Defendant Smith. Defendants Massey, Perry, and Tourangeau were copied on this letter.

51. The letter stated that information had been received by the Dean of Students Office that indicated he may have been involved in activities that violate the university code of conduct. The allegation was that Zhou violated UTDSP5003 §C.9.6(18) Disruptive Conduct: Engaging in disorderly, lewd, indecent, inappropriate, loud, or obscene conduct or behavior that interferes with the orderly functioning of the University or interferes with an individual's pursuit of an education.

52. The letter further stated, "These allegations may present a health or safety threat to individuals on the UTD campus. Therefore, based on the information we have received, you are being placed on an interim ban from the UT Dallas campus. This ban prohibits you from being on campus for any reason unless approval is given from the Dean of Students Office."

53. After receiving the letter, Zhou was deeply upset. He spent most of his days and nights on campus, actively participating in activities. If he couldn't be on campus for his senior year, it would significantly affect his extracurriculars needed for graduate school or jobs and diminish a pivotal year of his college life.

54. Defendant Smith initiating disciplinary proceedings and banning Zhou from campus was only the beginning of the repression he would face from UTD administration because of his pro- Palestine political expression.

55. Five days after commencement, on May 20, 2025, Magistrate Judge Kevin Harris reviewed a probable cause affidavit filed by Detective David Wawak and signed two arrest warrants for Zhou, 22.01(b)(1) Second Degree Felony Assault of a Public Servant and Misdemeanor Disrupting Meeting or Procession 42.05(a).

56. Defendant Lt. Willadsen claimed Zhou disrupted the commencement by loudly yelling and waving a flag, constituting a class B misdemeanor. He also alleged that Zhou blew a bugle near him, causing ear pain and hearing loss, which he considered felony assault on a police officer.

57. The UTD Police Department executed this warrant on May 30, 2025. At approximately 8:45 AM, five officers, including Defendants Chang and Willadsen (who was not in uniform, instead was dressed in civilian clothing), repeatedly banged on Zhou's apartment door.

58. Zhou unlocked and cracked the door open to peer outside, given how unusual the circumstances were. As soon as the door was unlocked, Defendant Willadsen pushed it open, and immediately cuffed Zhou at the entrance of his apartment though he posed no threat.

59. Zhou recognized Defendant Willadsen immediately as the officer who had choked him weeks before, and now Willadsen had forced his way into Zhou's home.

60. Zhou was then led inside his apartment, where he was instructed to put on his shoes while still handcuffed. Afterwards, he was escorted to the police car which would then transport him to Dallas County Jail. During this entire process, Zhou experienced extreme anxiety and had difficulty processing everything around him including questions he was being asked.

61. At the jail, Zhou was transferred from the vehicle for processing. He was taken into an examination corner where he was stripped and searched by officers before being allowed to proceed.

62. After the search, two female officers approached him. When one began to compliment his hair, the other responded, "What are you doing? This guy assaulted an officer." Zhou was taken aback by the disparaging remark of the detention officer, and at that point had no idea what they were referring to.

63. Immediately after Zhou's arrest at 9:50am, Defendant Tourangeau emailed UTD administration informing them that "the protestor with the horn has been arrested".

| | |
|---|---|
| **From:** | Tourangeau, Brent |
| **Sent:** | Friday, May 30, 2025 9:50 AM |
| **To:** | Martin, Rafael O; Smith, Amanda; Walls, John |
| **Subject:** | Arrest |

All,

Chengyang zhou a/m 1/22/04 The protester with the horn has been arrested by us and transported to Dallas co.

We will attempt to locate Balal later today.

Chief.

64. At arraignment, Zhou learned he was being charged with a felony, and his bail was set at $38,500. Following the hearing, he was reprocessed and strip-searched a second time.

65. During this search, two male officers examined every inch of his body, instructing Zhou to even bend over to examine his anal cavity before allowing him to change into a jumpsuit.

66. Zhou was then placed in a solitary cell for thirteen hours.

67. After hours of isolation and sleep deprivation, Zhou began pacing around in circles. The gravity of his situation filled him with dread. He was being charged with a second-degree *felony* assault on an officer, the same officer that assaulted him, and was facing a sentencing range of two to twenty years in prison if convicted.

68. Zhou was released from Dallas County Jail at approximately 11:00 PM on Friday, May 30, 2025.

69. Zhou is still mentally and emotionally traumatized by the nature of his arrest. He cannot sit comfortably inside a room unless he ensures the door is locked. Often, he finds himself anxious and on edge in public spaces, the targeted repression resulting from his political engagement robbed him of any sense of safety.

70. Over the summer, Zhou still did not know if his campus ban would continue into the following year causing him even more anxiety.

71. On August 18, 2025, Zhou received an email from the Office of Community Standards and Conduct ("OCSC"). The email lacked any specific signatory. The email stated that OCSC had "received report of an incident that occurred on May 16, 2025, at on campus street. As a result, a meeting has been scheduled with Shaq Massey on August 21, 2025, at 9:30 a.m. in Microsoft Teams." The notice further stated that this meeting would discuss Zhou's alleged

involvement in a violation of UTDSP5003 §C.9.6(18) Disruptive Conduct and §C.9.6(15) Violation of General Rules and Regulations.

72. On August 21st, 2025, after classes for the fall semester had already begun, the OSCS lifted the interim ban.

73. At a Teams meeting, Zhou was informed by OCSC that he had been found responsible for the allegations. He was presented with two options: accept responsibility along with a deferred suspension sanction, or deny responsibility and proceed to a hearing. Zhou, asserting that his actions on May 16th represented protected speech and expression, chose to deny responsibility and requested that the University arrange a hearing.

74. On September 10, 2025, Zhou filed a complaint with UTDPD after finally being allowed back on campus. In it he alleged that Defendant Willadsen's chokehold was in violation of ODOP Policy 601 which bans the use of the use of "chokeholds" and "vascular neck restraints."

75. On September 12, 2025, Zhou received an email from UTDPD Captain Adam Perry, requesting an opportunity to speak in person regarding the details of the complaint. Defendant Perry noted that speaking to Zhou was not a requirement and that Defendant Perry could investigate the complaint as it was provided.

76. Defendants Perry and Tourangeau served with Defendant Willadsen in the Richardson Police Department for approximately 25 years before all three became members of the University of Texas Police Department. The Richardson Police Department employs fewer than 200 licensed officers, while the UTPD is even smaller, with under 30 licensed police officers.

77. On September 24, 2025, Brent Tourangeau, Chief of UTDPD issued a letter to Zhou, which stated that his complaint was "investigated by a Use of Force expert, Inspector Funke, from the Office of the Director of Police. Inspector Funke concluded that there was no evidence

or corroborated facts to support any allegations of misconduct or violations of departmental policy by Lt. Willadsen. Based on the sworn statements provided and the video evidence reviewed, there is no indication of inappropriate behavior, use of excessive force, or any actions that would constitute a breach of University of Texas System Police policy or established professional conduct standards. This allegation against Lieutenant Willadsen is UNFOUNDED, and this matter is hereby concluded."

78. On October 14, 2025, Zhou received an email from OCSC notifying him that following a re-evaluation of the case and its associated allegations, the charge UTDSP5003 §C.9.6(18): Disruptive Conduct, had been removed from his case and replaced with UTDSP5003 §C.9.6(14): Obstruction of, Interference with, or Attempted or Unauthorized access to Institutional Activities, Facilities, and/or Grounds.

79. On November 26, 2025, as OCSC prepared for the hearing of Zhou –which would be a joint hearing involving two other students: Belal Elseisy and Tariq Ramadan–Amanda Smith and Shaq Massey exchanged a thread of text messages discussing how the clip of Zhou being "choked out" by Lt. Willadsen had been edited out of the videos they submitted as evidence.

80. On December 1, 2025, Zhou's charge had changed back from UTDSP5003 §C.9.6(14): Obstruction of, Interference with, or Attempted or Unauthorized access to Institutional Activities, Facilities, and/or Grounds to the original charge of §C.9.6(18) Disruptive Conduct.

81. Zhou was previously told that OCSC believed that charge §C.9.6(14.4) more accurately reflects the conduct being alleged, which is why charge §C.9.6(18) had been removed following the case re-evaluation. The arbitrary changes and inconsistent allegations hindered his belief that the proceedings would be fair and protect his rights as a student.

82. On December 1, 2025, in another text thread between Defendants Smith and Lyles, Lyles asks who Tariq Ramadan is and states "I wish we had arrest photos." Out of the three students, Tariq was the only one that had not been arrested. Defendant Smith responded, "I don't think he was arrested" with a photo identifying Ramadan.

83. The disciplinary hearing for the three students commenced on December 3, 2025. Zhou objected to the neutrality of the hearing officer, attorney Leila Gary as she was frequently retained by the University for disciplinary hearings and was paid for her services.

84. During the hearing, Leila Gary struck many of the students' exhibits from the record after Defendant Massey alleged on behalf of UTD that they were irrelevant to the case, denying the students opportunity to demonstrate viewpoint discrimination.

85. Leila Gary also refused to allow the students' First Amendment expert witness Law Professor Brian Owsley to remain in the room while OCSC presented their case.

86. Defendant Dean of Students Amanda Smith was the sole witness in support of OCSC's case. She first testified to having had foot surgery earlier. She stated at least three times during her testimony that she was wearing an orthopedic boot during commencement 2025. She also stated that her co-workers had suggested that she shouldn't be walking around, but she chose to do so anyway on the day of commencement.

87. Defendant Smith affirmed in her testimony that she did not hear Zhou's bugle. When cross-examined about this fact, Defendant Smith said the issue was with the "disruption in its totality" and that the disruption she was focused on is what occurred near the commencement when Defendant Benson paused for 28 seconds.

88. Throughout the hearing, most of the evidence Defendant Massey used to present OCSC's case were photos and videos taken far from the commencement ceremony. Many of the

photos and videos that establish Zhou's presence were taken in areas of campus far away from the graduation and the speaker stage and platform.

89. Defendant Smith in her testimony distinguished between protected assembly at areas that were outside of the commencement ceremony and unprotected assembly at commencement, noting that she thought the walking out of the commencement ceremony "was not a protected assembly. That was a disruption."

90. On December 19th 2025, Zhou received a letter written by Leila Gary finding that his actions during the commencement ceremony were considered to be conduct that interfered with or obstructed a University program, activity, or event, including participating in activities to disrupt scheduled activities of the University in violation of UTDSP5003 C.9.6(15) and (18); claiming that his chanting resulted in a 28 second pause of President Benson's speech.

91. Ramadan was found not responsible for the student disciplinary charges due to "insufficient evidence" and received no sanction.

92. Zhou received a sanction of a one-year deferred suspension and Elseisy received the sanction of a two-year suspension from any UT system institution.

93. On Jan 13, 2026, Elseisy and Zhou submitted an appeal to Vice President of Student Affairs Gene Fitch. They maintained that university policies must be interpreted in alignment with the provisions of the U.S. Constitution and the Texas Constitution, which protect political speech and peaceable assembly.

94. Similarly, they noted in their appeal that their political speech on May 16, 2025, is protected, as there were no material or substantial disruptions of the functioning of the university. They re-emphasized their argument from the hearing that Texas state laws governing "disruptive activities" expressly state that any enforcement actions must be interpreted to avoid infringement

upon any rights of free speech or expression guaranteed by the United States Constitution or the Texas Constitution (TX Educ Code § 51.935(e) (2024)).

95. They also alleged that UTD did not meet its burden of proof, and in finding Elseisy and Zhou responsible for the alleged violations, UTD is implementing viewpoint discrimination in violation of the First Amendment.

96. On February 16, 2026, Defendant Fitch wrote to Zhou, informing him that Leila Gary's finding of responsibility was affirmed. Fitch stated that "the preponderance of the evidence supports the conclusion that you participated in the disruption of President Benson's speech at the commencement ceremony when you engaged in chanting that interrupted the speech and caused a delay in the ceremony. Your actions constituted disruptive conduct as defined by the UT Dallas Student Code of Conduct."

97. When Zhou opened the notice, he immediately felt a fresh wave of panic and anxiety, unsure of what future speech could turn his deferred suspension into an active suspension, or even expulsion.

***Belal Elseisy***

98. Elseisy is a 21-year-old Software Engineer. As a student at UTD, Elseisy was motivated and hardworking, earning a position on the Dean's List every semester, and ultimately graduating with a 3.965 GPA. He contributed to the university through his leadership in the Arabic Student Association and his many projects as a Computer Science student.

99. While pursuing a degree in Computer Science, Elseisy consistently studied political subjects and actively engaged in political activities. He attended events for Black liberation, and for Palestine during heightened escalations in Jerusalem and forced displacement in the Palestinian neighborhood of Sheikh Jarrah. On October 6, 2023, Zionist settlers murdered a very close friend

of Elseisy's cousin in the West Bank, prompting Elseisy to actively organize for the recognition of Palestinian human rights and liberation.

100. On May 16th, 2025, Elseisy completed his Bachelor of Science in Computer Science and was thrilled to celebrate this accomplishment alongside friends at the UTD commencement ceremony.

101. As UTD President Richard Benson began his speech, Elseisy stood up and yelled, "President Benson! Your legacy is genocide. The students demand divestment!"

102. Elseisy then began walking out of the commencement ceremony. As he was exiting through the middle walkway, he yelled, "Shame on You" and "Free Palestine." Other graduates and student-attendees joined him in the walkout.

103. While attempting to walk away from commencement, university personnel stopped Elseisy and instructed him to take a different path, requiring him to walk all the way down to the parking lot, rather than through the graduates. Elseisy immediately complied with the instructions given to him and began walking in that direction.

104. Once he had reached the guest parking lot, Elseisy was taken aback at the number of UTD police, many of whom were grabbing and physically pushing students who were already walking away.





105. Defendant Willadsen could be seen grabbing Palestinian flags out of students hands or from around their necks and throwing the flags away in the trash.

106. In response to police aggression, Elseisy began chanting "cops off campus," expressing his belief that universities should not be places

where police are deployed to silence political speech or viewpoints. As he led this chant, he and other students continued moving away from the commencement towards the guest parking lot to the east of campus.

107. Another student told Elseisy that Defendant Lt. Willadsen had Zhou in a chokehold, so he moved to the back of the group and noticed a large police presence.

108. Elseisy and the other students continued chanting as they walked, aware that Defendant Dean Amanda Smith was keeping pace behind them recording with her cellphone, even though she had her orthopedic boot on.

109. Once they reached the Plinth, the main student union area of campus, students slowed down and one student, whose entire extended family had been murdered during Israel's ongoing genocide in Gaza, began to speak. At this point, Defendant Smith, was helped into a golf cart by Campus Police and continued following and recording the group of students. Defendant Losavio was beside her.

110. After the speech, the students dispersed, each making their way to their cars, with campus police trailing behind the students and surveilling them.

111. On May 19th, 2025, Elseisy went to UTD to attend the graduation of his friend, Nouran Abusaad, who was receiving her master's diploma.

112. Elseisy was seated in the audience, observing as numerous students crossed the stage carrying flags representing their home countries. He recorded Abusaad's moment on his phone as she proceeded to the stage. When she raised the Palestinian flag, he applauded along with many of their friends.

113. Unlike the other students, Abusaad was immediately escorted offstage. Elseisy was trying to record the incident but suddenly his phone pinged with an email notification. He had

received a letter from Defendant Smith. Defendants Shaquelle Massey, Captain Perry, and Chief Tourangeau were copied on this letter.

114. The letter stated that information had been received by the Dean of Students Office that indicated he may have been involved in activities that violate the university code of conduct. The allegation was that Elseisy violated UTDSP5003 §C.9.6(18) Disruptive Conduct: Engaging in disorderly, lewd, indecent, inappropriate, loud, or obscene conduct or behavior that interferes with the orderly functioning of the University or interferes with an individual's pursuit of an education.

115. As a result of this allegation, Defendant Smith would be initiating disciplinary proceedings against Elseisy and banning him from campus; such interim measures would be necessary to avoid any potential 'threat' he may cause to university functions.

116. Elseisy was shaken by this news and could not fathom that his own university was not only targeting another student for waving the Palestinian flag but simultaneously warning him not to step foot on campus. His graduation was in two days. This ban prevented him from participating in the graduation that he had worked so hard for.

117. When Elseisy's family and friends learned of his graduation ban, they sent multiple emails to Defendant Smith requesting she reconsider. Eventually, Defendant Smith responded on May 20, 2025: "It was brought to my attention that you called and requested a lift of your campus ban to attend graduation tomorrow. I am denying this request."

118. No further explanation was given to Elseisy as to why he was banned from celebrating one of his highest accomplishments.

119. On May 21, 2025, the day Elseisy was scheduled to participate in his graduation ceremony, he awoke feeling disappointed. He would not have the opportunity to celebrate with friends and family while wearing his new suit, graduation regalia, and honors cords.

120. On May 30, 2025, while Elseisy was in Japan with his brother, Defendant Lt. Willadsen, Defendant Chang, and other UTD officers went to his family home. Lt. Willadsen told Elseisy's mother he had a warrant for Elseisy's arrest for class B misdemeanor disruption of a meeting. She informed them her son was not home and was in Japan.

121. Elseisy woke up in Japan to dozens of calls and texts from his parents and siblings worried about his safety. Elseisy was surprised that his university would go to such lengths.

122. On June 3, 2025, Lt. Eric Willadsen emailed Lt. Karl Ross of the DFW Airport Police to coordinate Elseisy's arrest from the airport. Something unheard of for the charge Elseisy was facing – a Class B misdemeanor, Disrupting a Meeting or Procession. Shockingly, Defendant Lt. Willadsen placed Elseisy in danger by alleging that he was the leader of a group associated with Hamas.

> Lt. Ross,
>
> We have an arrest warrant for:
>
> Hussien, w/m 03/10/05 TX DL 45744895
> Dallas County warrant #M2550473
> UTDPD service number is 20250005540
> Warrant is on NCIC
>
> He is currently in Japan but scheduled to fly out on 06/05/2025 from LAX to DFW on AA flight 1669. Flight departs LAX @1835PST.
>
> Elsiesy is the leader of the Students for Justice in Palestine (SJP) at UTD. This group has been linked to Hamas and is very active on our campus. The warrant is for disrupting the commencement ceremony at graduation in May. If you have the ability to arrest him after his flight, we can pick him up and transport to DSO. When he is arrested there will be protestors, if he calls anyone. If yall are unable to arrest, that is fine, just let us know. My cell is 214-957-3440 and I can be reached anytime.
>
> Thank you for your assistance.
>
> Eric Willadsen #2571
> Lieutenant | Investigations
> UAS Department Flight Coordinator
> UT Dallas Police Department
> 800 W Campbell Rd
> Richardson, TX 75080
> Dispatch: 972-883-2222
> Office : 972-883-2574
> *https://police.utdallas.edu/*

123. On June 4, 2025, Elseisy's Global Entry was revoked. While on his flight back from Japan to LAX, Elseisy was anxious and could not sleep, mentally preparing for his arrest in California.

124. Elseisy was not arrested at LAX airport, but once the airplane landed in Dallas, Elseisy could see police cars on the tarmac through the glass of the jet bridge.

125. At approximately 11:30 PM on June 5, 2025, Elseisy stepped outside of the airplane door and onto the jet bridge. As soon as he did, airport police approached him, inquired about his name, and arrested him. Elseisy's brother, who had joined him on the trip to Japan, pleaded to stay with him, but the police ordered his brother to immediately leave or face arrest as well.

126. After opening the jet bridge, police escorted Elseisy down a flight of stairs to the tarmac, where they searched him, placed him in handcuffs, and transported him in a police car. Still reeling from the shock, Elseisy was brought to a holding cell at the airport.

127. All Elseisy could think about was that the following day was the Islamic holiday of Eid and that his family was likely in a panic while he was in an airport jail.

128. UTD police officers came to the airport jail, placed Elseisy in handcuffs, and then drove him to the Dallas County Jail using a UTD police vehicle. He was finally released from Dallas County Jail at approximately 6:15AM.

129. On August 18, 2025, Elseisy received an email from the Office of Community Standards and Conduct, that they had "received report of an incident that occurred on May 16, 2025 at on campus street. As a result, a meeting has been scheduled with Shaq Massey on August 26, 2025 at 10:00am in Microsoft Teams." The notice further stated that this meeting would discuss Elseisy's alleged involvement in a violation of UTDSP5003 §C.9.6(18) Disruptive Conduct.

130. During the meeting, Elseisy was informed OCSC had found him responsible for the allegations, and he could accept responsibility and a sanction of suspension for a year should he attempt to further his education at *any* UT system university, or he could deny responsibility and proceed to a hearing. Elseisy maintained that his conduct on May 16th was an exercise of protected speech and expression, denied any wrongdoing, and asked the University for a hearing.

131. On October 14, 2025, Elseisy received another email from OCSC notifying him that following a re-evaluation of the case and its associated allegations, the charge UTDSP5003 §C.9.6(18): Disruptive Conduct, had been removed from his case and replaced with UTDSP5003 §C.9.6(14): Obstruction of, Interference with, or Attempted or Unauthorized access to Institutional Activities, Facilities, and/or Grounds.

132. Zhou, Ramadan, and Elseisy's hearings and results are described in detail above.

133. On November 6, 2025, the Dallas County District Attorney's Office filed a criminal complaint alleging that Elseisy:

> "on or about the 16th day of May, 2025 did then and there, with intent to prevent and disrupt a lawful meeting, procession, and gathering, obstruct and interfere with said meeting, procession, and gathering, namely: UNIVERSITY OF TEXAS AT DALLAS GRADUATION, by verbal utterance and physical action, to-wit: YELLING LOUDLY AND WAVING A FLAG, Against the peace and dignity of the state."

134. On December 9th 2025, Elseisy received a finding that his chanting during commencement disrupted scheduled activities of the University for 28 seconds and that he led others gathered at or near the commencement ceremony area in organized chanting which resulted in an interruption and a delay in the University's commencement ceremony. These actions were found in violation of UTDSP5003 §C.9.6(15) and (14)(4).

135. The sanction was a two-year suspension of Elseisy from pursuing further education not only UTD, but all Texas System Universities.

136. On February 16, 2026, in response to the appeal submitted by both Elseisy and Zhou, Defendant Fitch affirmed Leila Gary's finding of responsibility and concluded his letter by reminding Elseisy that he was not permitted on any campus of any UT System institution during his two year suspension.

137. On February 19, 2026, Elseisy signed a pretrial agreement with the Dallas County District Attorney's office. The agreement required that he "commit no offenses in violations of laws of the State of Texas" for 30 days, "abstain from all illegal substances" and "voluntarily, knowingly, and intelligently waive" his rights to a complete expunction of the records and files relating to his arrest.

138. Significantly, the pretrial agreement did not include any language requiring Elseisy to admit guilt or remorse for his actions.

139. On March 27, 2026, the District Attorney of Dallas County requested that the court dismiss the criminal case against Elseisy, citing his successful completion of the requirements outlined in the Pretrial Intervention Agreement. That same day, the County Criminal Judge signed the dismissal order.

***Students for Justice in Palestine (SJP) UTD***

140. Plaintiff Students for Justice in Palestine at the University of Texas Dallas ("SJPUTD"), is a student organization that promotes educational awareness of the history of Palestine and encourages UTD to disclose their investments in, as well as financially divest from, companies that are currently providing material support to and profiting off the ongoing genocide of the Palestinian people.

141. In SJPUTD, students can express themselves and care for a greater cause in a university environment that commonly encourages them to care only for their personal and

academic success. Students take time from their busy schedules to educate themselves through study ins and town halls, support one another in difficult times through vigils, and take actions to promote their goals through protests and press conferences.

142. As Israel escalated its genocide in Gaza, people took to streets and campuses across the United States, protesting Israel's violence which they were witnessing through live videos of demolished homes, mangled bodies, and images of children with missing limbs. Israel has murdered 70,000 Palestinians in Gaza according to the Gaza Ministry of Health; other reports estimate the death toll to be 150,000. Students at UTD grieved the dead and protested, outraged by UTD's continuous investment in the companies that supply Israel with bombs and technology for genocide.

143. On September 2, 2025, Mariam Lafi, SJPUTD's president, received a letter from OCSC, placing SJPUTD in disciplinary proceedings.

144. The email stated that OCSC "received report of an incident that may have involved your organization, Students for Justice in Palestine, that occurred on May 16, 2025." The notice further stated that a meeting had been scheduled to discuss SJPUTD's alleged involvement in violation of UTDSP5003 §C.9.6(18) and §C.9.6(15) Violation of General Rules and Regulations.

145. During this meeting Defendant Massey stated that SJPUTD could accept responsibility and a one-year suspension, or could deny responsibility and proceed to a hearing. SJPUTD denied responsibility.

146. On September 12, 2025, in an exchange between Defendant Massey and Sean Payne, they noted that SJPUTD appeared to be the first UTD student organization to face disciplinary hearings.




147. On October 14, 2025, SJPUTD received an email from OCSC notifying them that following a re-evaluation of the case and its associated allegations, the charge UTDSP5003 §C.9.6(18): Disruptive Conduct, had been removed from SJPUTD's case and replaced with UTDSP5003 §C.9.6(14): Obstruction of, Interference with, or Attempted or Unauthorized access to Institutional Activities, Facilities, and/or Grounds.

148. On November 17th, 2025, OCSC sent SJPUTD a notice scheduling an official disciplinary hearing at 10:00AM on Thursday, December 11, 2025, with hearing officer Leila Gary.

149. The disciplinary hearing for SJPUTD commenced on December 11, 2025, eight days after the disciplinary hearing held for Plaintiffs Zhou and Elseisy. The sole witness again was Defendant Smith.

150. Defendant Smith stated that the chant "we are all SJP," tied the student organization SJPUTD to the walkout that occurred during commencement on May 16, 2025.

151. Defendant Massey submitted a video recorded by Defendant Smith as evidence and marked as Exhibit H2. The video which is seven minutes long is recorded as the students are already out of the commencement ceremony area walking to their cars. The Exhibit H2 video was withdrawn by UTD from the disciplinary hearing held on December 3, 2025, because Zhou,

Elseisy, and Ramadan objected to its relevance, noting it was recorded far from the commencement ceremony and the fact that the video appeared to be edited.

152. Students are heard chanting*:* “Amanda Smith you will see Palestine will be free”; “Amanda Smith you can’t hide you defend genocide”; “Cops off campus”; “Disclose, divest, we will not stop, we will not rest”; “UTD you can’t hide we charge you with genocide”; “Free Free Palestine, Free Free Palestine”; “We want justice you say how, UTD divest now”; “Israel bombs UTD pays, how many kids have you killed today”; “Blood money on your hands, show us your divestment plans”; “UTD you will see Palestine will be free”; “We want justice you say how free Mahmoud Khalil now”; “We want justice you say how free all our students now”.

153. Defendant Smith can be heard exclaiming “well this good to have” when the chant “we are all SJP” begins. The chant goes on “From Dallas to NYC we are all SJP!” Later Defendants Losavio and Goodwin refer to the “we are all SJP” chant as a mistake by the students.

154. SJPUTD does not have a trademark on SJP, SJP simply stands for Students for Justice in Palestine. If students want to chant about their support for Palestine, then they are exactly that–they are students who believe in justice for Palestine.

155. Social media has contributed to the popularization of chants and common phrases that are used across the whole world. “We are all SJP” and “who are we, SJP” are popular nationwide chants. The chant originated at Columbia University in November 2023, and has since been used at various universities, from Columbia, Rutgers, to UGA, to UCLA. Even in Defendant Smith’s testimony, the mention of “from Dallas to NYC, we are all SJP,” further demonstrated that these chants were expressions of a national culture. The chant is a spinoff from another widely popular chant, “we are all Palestinian,” which Palestinians and non-Palestinians alike chant.

156. SJPUTD was denied the opportunity to demonstrate these facts and provide valuable cultural context in their defense as Leila Gary refused to allow exhibits submitted by the organization that demonstrate how the chant "We are all SJP" was said across many U.S. universities and the chant "we are all Palestinian" was said all the way from Ireland to South Africa.

157. On February 6, 2026, Leila Gary found SJPUTD responsible for violating University policies UTDSP5003 §C.9.6(14)(4) and UTDSP5003 §C.9.6(15). The imposed sanction was a one-year suspension from campus.

158. On February 17, 2026, SJPUTD appealed Leila Gary's decision, contending that UTD had not adequately demonstrated, by a preponderance of the evidence, SJPUTD's involvement in the commencement protests. Additionally, SJPUTD argued that, even if participation were established, the students' conduct during the commencement was protected under the First Amendment of the United States Constitution.

159. Finally, in their appeal, SJPUTD raised that the Leila Gary inappropriately took into consideration a statement by an unidentified individual who said, to Defendant Smith "I don't care if you got my picture, you fuckin' bitch." While this statement is not connected to SJPUTD, even if it were, this is classic first amendment protected speech and was not "obscene" as Leila Gary incorrectly alleged.

160. On March 12, 2026, Defendant Fitch affirmed Leila Gary's decision. SJPUTD was officially suspended for one year.

161. On March 24, OCSC issued a notice to SJPUTD detailing the actual limitations of the suspension. The letter noted that since SJPUTD was found responsible for UTDSP5003 §C.9.6(14) and (15), they were no longer entitled to the privileges registered student organizations

typically enjoy and thus are prohibited from reserving Campus space and using University resources.

162. This suspension prevents SJPUTD from operating as a registered organization, revoking the ability of the organization to host events and gatherings on campus.

163. The suspension of SJPUTD did not occur in a vacuum but was part of a lengthy effort by the Defendants to impede SJPUTD's educational efforts on behalf of Palestine.

**<u>UTD Speech Resource and Expression Team's ("SERT") aka "Free Speech Team"</u>**

164. Defendant Dean Amanda Smith is responsible for the programmatic, functional and administrative implementation of the UTDSP5001 – Speech Expression and Assembly Policy.

165. Defendant Smith allegedly established the UTD Speech Resource and Expression Team ("SERT" aka "Free Speech Team") to act as a resource guide for students to ensure that compliance with the Student Code of Conduct when there is any type of protest or free speech activity on campus. However, no students were aware of the existence of the Free Speech Team until they learned about it during disciplinary proceedings in late 2025. The Orwellian Free Speech Team is not mentioned on the UTD website and there is no point of contact for the student body.

166. Defendants Smith, Losavio, Winkler and Goodwin are all members of the Free Speech Team, which is a volunteer effort.

167. According to open records requests, no other University of Texas campuses have free speech and expression teams.

168. The Free Speech Team was established either in November 1-3, 2021 or December 12-14, 2019. The information below was provided by UTD when asked for trainings and meeting dates:

*02/07/2019: ACUI Free Speech Webinar*

- *~~11/01/2021-11/03/2021:~~ This should be December 12-14, 2019 and it's the NASPA Student Affairs Law Conference*

- *03/30/2022: "Free Speech, Academic Freedom, and Retaliation" Webinar hosted by UT System*
- *09/20/2023: Student Affairs Professional Development Committee "Say What?" A Free Speech and Expression Workshop*
- *01/24/2024: "Dealing with Conflict on Campus" Student Protest Webinar, Hosted by PaperClip Communications*
- *05/09/2024: SERT Meeting, Hosted by Dr. Amanda Smith*
- *07/18/2024: Free Speech and Expression Training, Hosted by Dr. Dan Goodwin*
- *~~08/15/2024:~~ This should be 08/23/2024: SERT Introductory Meeting, Hosted by Dr. Amanda Smith*
- *09/30/2024: SERT Follow-up Meeting, Hosted by Dr. Amanda Smith*
- *~~11/15/2024:~~ Upon further review, this was not SERT related and was merely individual studying of UTDSP5001*
- *12/13/2024: SERT Meeting, Hosted by Dr. Amanda Smith*
- *04/23/2025: Free Speech and Expression Training, Hosted by Dr. Dan Goodwin*
- *09/03/2025: Speech regarding the importance of SERT and what to make of today's free speech environment on college campuses. Speech given by Dr. Dan Goodwin to group of Student Affairs Assistant Directors*

*Clarification Notes: The workshop slides and handouts are from 04/23/2025, but were the same slides and handouts used on 07/18/2024*

169. Significantly, SERT, also known as the Free Speech Team, had their first meeting on May 9, 2024 immediately after the Pro- Palestine encampment on May 1, 2024.

<u>Surveillance</u>

170. SJPUTD has been subjected to additional scrutiny when booking rooms and events and their social media posts are closely monitored by the Defendants. Plaintiffs are not aware of any other student organizations treated in the same manner.

171. On October 12, 2023, Melissa Duchin Friedensohn, Executive Director of Hillels of North Texas Jewish Campus Life in North Texas, emailed Defendant Smith with guidance on surveillance of SJPUTD. She suggested that the University ask SJPUTD student organizers for detailed descriptions of what they are planning, monitor SJPUTD social media, and coordinate with Hillel on campus to inform them of SJP activities. This email was forwarded by Defendant Smith to Defendant Fitch.

172. Jade Steinberg, the President of Hillel at UTD, emailed on August 27, 2024, Defendants Smith, Massey, Fitch, Tourangeau, Losavio, Winkler, about an SJP post that used the word intifada and accused SJP of calling for violence. Defendant Fitch questioned whether Defendants Smith, Massey, Losavio, and Winkler submitted anything to the Office of Institutional Compliance and then they discussed consideration of interim actions and to "address the issue of contacting police with safety concerns."

173. On September 26, 2024, Student Organization Center (SOC) staff repeatedly emailed SJPUTD members asking questions and requesting details about bookings and events between October 3, 2024, and October 11, 2024. When SJPUTD officers responded to the inquiries, SOC forwarded the responses to Defendant Goodwin, who forwarded the emails to Defendants Smith, Winkler, Shaw, Martin, Zuber, and Perry.

174. On October 1, 2024, Jason Holder Bennett, the secretary of the student organization "Comets for Israel," emailed Defendant Winkler alleging that SJPUTD was "planning a campus disruption on 7 October”. "As I noted in our meeting, I spent time in Naval Intelligence. Friends still serving occasionally send me notes. I can assure you that SJP doesn't plan on being quiet as they leave class and assemble in Chess Plaza. I urge you to warn campus police to be ready for chaos."

175. Defendant Winkler immediately forwarded Bennett's email to Defendants Smith, Tourangeau, and Perry, saying that she met with the student and wanted to make sure that the recipients of the email were "aware of his concerns."

176. On October 7, 2024, Defendant Goodwin emailed Defendants Zuber, Perry, Smith, and Martin an update about SJP's activities, alleging that SJPUTD would not host their scheduled activities in the booked rooms and instead would organize a walkout in Chess Plaza on campus.

Goodwin mentioned that they would re-organize their Speech Resource and Expression Team's ("SERT") presence around Chess Plaza, observe in the OCSC conference room, and make frequent on-site visits to the plaza.

177. On January 13, 2025, Professor David Patterson sent an email about SJPUTD's January 25th educational event "How to Build Self-Reliant Communities" claiming that it was meant to spread "blatant Jew hatred." Defendant Fitch emailed Defendants Goodwin, Winkler, and Smith about Patterson's email asking, "Are we certain SJP followed all guidelines for sponsoring with outside groups? I thought there were specific details about how/if this can occur?"

178. Defendant Smith forwarded an email regarding the event to Defendant Goodwin with an attachment titled "Alert - Terror-supporting PYM to Host Event at University of Texas, Dallas.pdf."

179. On March 10, 2025, Joseph Greenwell, the Senior Vice President for Student Affairs at Columbia University, sent an email discussing a "National Day of Action" on March 11th posted by National Students for Justice in Palestine on Instagram, and Defendant Fitch forwarded this email to Defendants Goodwin, Smith, and Winkler. Defendant Smith replied, "Nothing has been posted," indicating their continuous practice of surveilling SJPUTD social media and events.

**The Gaza Liberation Plaza Encampment**

180. On May 1, 2024, students at UTD began setting up encampments in the Chess Plaza location of campus, renaming it the Gaza Liberation Plaza, and ensuring that both side walkways were empty so not to obstruct the path of students. This effort was conducted so that students could express their opposition to the ongoing genocide of Palestinians and to demand that their universities disclose their investments in, as well as financially divest from, companies that are

currently providing material support to and profiting off the ongoing genocide of the Palestinian people living in Gaza.

181. By the afternoon, officers from multiple agencies, including UTDPD, Texas DPS, Texas Marshals, Richardson Police Department, Allen Police Department, and Collin County Sheriff's Office, arrived at the encampment.



*Still of law enforcement marching on campus with heavy weaponry.*





182. Students were faced with a militarized police force complete with riot gear, armored SWAT vehicles, and snipers. This use of force had never been seen before on campus.

**<u>The Engineering and Computer Science – West Study-In</u>**

183. On December 5th, 2024, SJPUTD held a "study-in" inside of the Engineering and Computer Sciences Building (West). Students sat on the right half of the stairs with flyers taped to their laptops encouraging students to resist recruitment from weapons manufacturers.

184. Two banners were physically held at all times of the study-in off the stair railings reading "WE WILL HONOR ALL OUR MARTYRS" with names of people martyred in Israel's genocide on Gaza and "ECS STUDENTS DON'T DESIGN THE DEATH MACHINE."

185. A few hours into the study-in, Defendants Losavio, Goodwin and unidentified members of the UTD Police approached students telling them that they had to leave the building.

186. When students responded that they had the right to sit in the buildings of their own campus, they were told that the way they were seated was a fire hazard. Students demonstrated that there was enough room for at least two people to walk side-by-side on the stairs at all times, in compliance with guidelines from a fire-marshal.

187. After receiving this information, police threatened to arrest students that would not leave the building.

188. Defendant Martin later entered and joined Defendants Losavio and Goodwin in speaking with students. Shortly after, the fire marshal entered the building and spoke with officers and administration.

189. After the administrators were unable to find any violations of UTD policy by the students Defendant Martin informed them they could continue the study in; however, police remained stationed inside and outside of the building until all students left.

**<u>Chalk the Block</u>**

190. In April 2025, SJPUTD was tabling alongside a Chalk-the-block event. Although "Chalk-the-block" is a re-occurring event that SJPUTD has hosted over the years, Defendant Losavio approached the students threatening them with disciplinary conduct. She demanded student IDs and refused to provide any explanation for how easily erasable chalk violates the student code of conduct.

191. Other student groups on campus had had been allowed to chalk without reproach from UTD administration.

**From:** Smith, Amanda <amanda.smith@utdallas.edu>
**Date:** Thursday, April 3, 2025 at 2:44 PM
**To:** Fitch, Gene <gene.fitch@utdallas.edu>
**Subject:** FW: Retrograde Question regarding chalk policy

FYI – This group was chalking on the plinth and Dan and Tricia went and told them they needed to stop. We have not allowed any group to chalk on Student Union reservable spaces since the academic year started in August. I don't know what the comment is about FOCUS. Dan said Communications is also aware (I am assuming they were emailed as well) and is responding to the student.

**From:** Losavio, Tricia <tlosavio@utdallas.edu>
**Date:** Thursday, April 3, 2025 at 1:30 PM
**To:** Goodwin, Dan <Dan.Goodwin@utdallas.edu>, Smith, Amanda <amanda.smith@utdallas.edu>, Winkler, Kimberly <kwinkler@utdallas.edu>
**Subject:** Fw: Retrograde Question regarding chalk policy

FYI, He was out there.

**From:** Olivares Gutierrez, Gregorio <Gregorio.OlivaresGutierrez@UTDallas.edu>
**Sent:** Thursday, April 3, 2025 1:28 PM
**To:** DOS <DOS@utdallas.edu>; Losavio, Tricia <tlosavio@utdallas.edu>; Long, Daniel <dlong@utdallas.edu>
**Subject:** Retrograde Question regarding chalk policy

Hello Dean of Students office,

This is Gregorio Olivares, Editor-in-Chief of The Retrograde. I wanted to see if you could share the specific policy details you gave to SJP in regards to chalking with us. We also wanted to know if you could talk about what groups it applies to sincs to our understanding FOCUS has been allowed to chalk.

Best,
Gregorio Olivares

192. Although Dean Smith maintained that no group has been allowed to chalk, this was easily disproven.





193. Additionally, beside the table, SJPUTD had a flagpole with the Palestinian flag. They were told to take down the flag as it was against UTD policy. When students asked why this is the first time this had happened when the week before at a Muslim Student Association event the exact same flagpole and flag were displayed, they were met with no answer other than that it was a violation of policy.

194. The students complied and took down the Palestinian flag.

**The Jindal School Of Management Study-In**

195. On October 7th, 2025, students entered the Niveen Jindal School of Management (JSOM) building and sat in the lobby to study. On their laptops, they taped flyers called on JSOM to cut ties with Israeli companies and weapons manufacturers facilitating the Israeli Occupation of Palestine and genocide on Gaza.

196. The students also laid their back packs on the bench where they sat, and atop the backpacks, laid a banner that read "UTD YOUR HANDS ARE RED; UTIMCO DIVEST FROM DEATH."

197. The previous day, Defendant Goodwin had alerted the Associate Dean of JSOM that students will participate in a study-in, claiming that "acts of expression will not be permitted

indoors unless in a reserved space,"

10/6/25 1:17 PM

Tom - we have been made aware of students attempting a 'study-in' in JSOM tomorrow. (FYI - acts of expression will not be permitted indoors unless within a reserved space). I wanted to connect to see if you are aware of any companies that may have advertised their presence within your building that may have been subject to protest activities in the past. If so, we would probably want to give them a heads up about this.

Kim, Tom C 10/6/25 1:24 PM

We have not heard of this protest tomorrow. I am checking which employers we have coming into JSOM.

10/6/25 1:45 PM

Ok.

October 7, 2025

Kim, Tom C 10/7/25 12:53 PM

Very interesting. My staff found several posts made by the SJP UTD which initially sounded like a student org. They post on instagram with the students. A of it for today is really encrypted.

10/7/25 1:12 PM

It was reported to my office that some individuals have concerns about a potential 'study-in' somewhere in JSOM at 2:30.

Kim, Tom C 10/7/25 1:12 PM

Yes, that was mentioned I believe in the post on instagram. code word was study in.

10/7/25 1:13 PM

My staff will be keeping an eye out for safety concerns and ensuring policy is being followed.

Kim, Tom C 10/7/25 5:51 PM

So apparently they did have a study in with Signs on their laptop and poster boards. I am pretty sure the Jewish students and faculty were feeling anxious. Not a good thing inside the building. I would say 30-40 students.

198. Soon after the start of the study-in, Defendant Smith, approached students telling them to put the banner away.

199. Students protested, as the banner was not taped to any surfaces and was not left unattended. Defendant Smith responded that the JSOM building reserves the right to create its own policies and regulate speech and that the building had requested that the banner be taken down.

200. When students asked for proof that anyone in the building took issue with the banner, Defendant Smith refused to answer.

201. The students took down the banner.

***Nouran Abusaad***

202. Nouran Abusaad is a Palestinian American who moved to the United States at the age of nine. Her family was displaced from the province of Tulkarem, Palestine in 1967. Growing up, Abusaad would often hear the stories of Palestinians standing up against injustice and forceful displacement.

203. She studied Healthcare Management at the University of Texas at Dallas, obtaining her bachelor's degree at the age of 19, and fast-tracking to a graduate program that enabled her to complete a Master of Science in Healthcare Management and Leadership at the age of 20.

204. During her time at UTD, Abusaad was troubled by the lack of political engagement on campus. She witnessed students that were passionate about many causes, especially Palestinian liberation, but not many facets to help grow that passion and educate others.

205. On May 1, 2024, Abusaad was among 21 students, faculty, and community members who were arrested by more than five police departments and subsequently taken to Collin County Jail.

206. Nearly 24 hours later, Abusaad  was released on personal reconnaissance bond but was prevented from being present on campus except for attending classes and class-related activities. This ban prevented her from continuing her political engagement on campus.

207. Nevertheless, Abusaad continued pursuing her master's degree and completed the program on May 19, 2025. Her friends and family gathered to watch her cross the commencement stage, proud of her accomplishment. Other students proudly carried Indian and American flags.





208. Around 2:00PM Abusaad walked the stage, holding a Palestinian flag that read "DIVEST FROM DEATH."




209. Abusaad was escorted off by stage personnel, who were soon followed by Defendant Alvarado. She was led away from the graduation and taken to a room where Defendants Martin and Smith awaited her.

210. Defendant Smith instructed the police officers Defendants Tourangeau, Wawak, Alvarado, and Clark to "go ahead and escort her off campus and she should be criminally trespassed as well."




211. Abusaad was issued a trespass warning, signed by Defendant Clark and was told she was not allowed to come back to UTD campus or she would be arrested. No end date was specified. Abusaad was then escorted off campus by Defendants Wawak and Alvarado.

***Mousa Najjar***

212. Mousa Najjar is a Palestinian American whose family was expelled from their village, Sarafand El Ammar, Palestine in 1948.

213. Najjar majored in Computer Science at UTD, and his interest peaked in machine learning labs and creating language models. Najjar was a highly successful and motivated student, graduating with a 3.7 GPA.

214. Growing up in a Palestinian American household, Najjar was interested in political and historical discourse, and sought an opportunity to explore these interests while studying at UTD. Najjar joined SJPUTD to organize advocacy campaigns for Palestine. His motivation was furthered by realization that his own university was directly investing in companies that are currently providing material support to and profiting off the ongoing genocide of the Palestinian people living in Gaza.

215. Najjar served as President of the SJPUTD board from January 2023 – May 2024.

216. On May 1, 2024, Najjar was among 21 students, faculty, and community members who were arrested and taken to Collin County Jail.

217. Najjar was released on a personal reconnaissance bond, with an added bond condition that he was not to be present on campus except for attending classes and class-related activities.

218. On May 15, 2024, believing graduation to be a class related activity, Najjar walked the stage to celebrate his greatest milestone in life, completing a bachelor's degree in computer science.

219. Defendant Alvarado saw that Najjar was present on campus for his graduation ceremony and informed Defendant Scott that Najjar was what he believed to be "criminally trespassing" on UTD's campus.

220. Given the ongoing genocide in Gaza, Najjar chose to recognize Palestine during his walk across the stage moment and raised a Palestinian flag that stated, "UTD DIVEST FROM DEATH".




221. As he walked the stage, Defendant Smith ran up behind him and said "Mousa this is a disappointment" while threatening his immediate arrest.

222. Najjar was approached by Defendant Smith, Defendant Tourangeau, and Defendant Scott in the hallway of the Activity building after being escorted off the stage, where he was informed by Defendant Smith that he was in violation of his bond conditions and asked to leave the campus.

223. Defendant Zuber, and Defendant Scott walked Najjar to his vehicle. Defendant Zuber told Najjar that he was also in violation of his bond condition and that he was not allowed on "UTD campus except for the purpose of attending classes or class related activates".

224. While driving away, Najjar looked to the back and to his surprise a UTD Police car was still following him off campus.

225. On May 17, 2024, Defendant Smith sent the following email to Defendant Bishop, regarding Najjar's bond conditions:

> I am the Dean of Students for the University of Texas at Dallas. I am aware of the Court Order for Conditions of Bond applicable to Mousa Najjar. The bond conditions were shared with me by the UT Dallas Police Department. I have reviewed the bond conditions, specifically: "May not go on the UT Dallas campus except for the purposes of attending classes or class related activities." I interpret this to mean he is only permitted to attend classes that he is enrolled in or required activities related to a class he is enrolled in (such as a scheduled exam or guest speaker). I interpret graduation and related activities to fall outside of this permission because they are voluntary and not related to any class.

226. Defendant Bishop completed a Warrant of Arrest for Criminal Trespass 30.05(a)(1) and Disrupting Meeting or Procession 42.05(a).

227. On June 27, 2024, Najjar was arrested after being stopped for a traffic violation and was booked into the Denton County Jail. He was released six hours later.

228. On September 29, 2025, the Dallas County District Attorney's Office filed a criminal complaint for disrupting a meeting or procession which alleged that on May 15, 2024, Najjar with:

> "intent to prevent and disrupt a lawful meeting, procession, and gathering, obstruct or interfere with said meeting, procession, and gathering, namely: A graduation ceremony, etc, by physical action, to wit: standing on the front of stage displaying a flag and refusing to leave".

229. On November 11, 2025, a second complaint for criminal trespass was filed and alleged that on May 15, 2024 Najjar:

> "intentionally and knowingly enter and remain on the property of another namely D. Wawak and University of Texas at Dallas, hereinafter called the complainant without the effective consent of the complainant, and the defendant did then and there have notice that entry was forbidden, in that complainant had by oral and written communications informed the defendant not to enter said property".

230. On November 13, 2025, the Dallas County District Attorney's Office moved to dismiss the criminal charges against Najjar because "after review of the evidence…it has been determined that the State is unable to present a prima facie case to the Court" .

231. The State's motions to dismiss were granted by County Criminal Court Judge and all charges against Najjar were dismissed.

***Casey Choi***

232. Casey Choi is a Korean-Mexica- American living in Houston, who grew up with a passion for video games. He was fascinated not only by playing games, but also by the design and creation of games.

233. These interests prompted Choi to apply for a major in Arts, Humanities, and Technology with a concentration in Design, at the University of Texas at Dallas.

234. As the years progressed Choi was very involved on campus and worked rigorously on his studies. When the genocide in Gaza began, Choi remembered his activism in High School, particularly the Black Lives Matter movement, and how he began seeking justice for those facing racial discrimination.

235. Upon learning that UTD directly invests in weapons manufacturing companies that directly contribute to the genocide in Gaza, he could no longer remain idle. Choi believed being in unprecedented times, where atrocities were streamed live on social media, history would hold everyone accountable, prompting him to join SJPUTD.

236. Choi participated in the encampment for Palestine held at UTD and on May 1, 2024, he was arrested along with 20 other students and faculty members on campus.

237. Choi spent the night in jail unable to sleep recalling the aggressive and massive police presence. The next morning Choi and the other 20 students and faculty were arraigned and released on bond. His bond conditions stated he may be present on campus except for class and class-related activities.

---

**From:** Smith, Amanda <amanda.smith@utdallas.edu>
**Sent:** Thursday, May 2, 2024 4:32 PM
**To:** Martin, Rafael O <rafael.martin@utdallas.edu>
**Subject:** Re: Arrestees

It appears as though Mousa and Casey Choi are both supposed to graduate this semester. Waiting for confirmation that they applied.

238. Choi believed that graduation was a class related activity. Choi was never told by UTD administration that he could not attend, even though they were aware of his upcoming graduation.

239. On May 15, 2024, Choi walked the stage for his graduation from the University of Texas at Dallas. After his emotional distress from the arrest at the encampment, Casey chose not to raise a flag, wear a kufiyah, or wear anything visibly pro-Palestinian in fear of what could occur.

240. Despite this, a UTD police officer recognized Choi and said "We see you" as he walked off the stage.

241. After celebrating graduation, Choi returned to his home in Houston.

242. On July 31, 2024 Choi received a call from Richardson Police Department, that UTD Police had an outstanding warrant for his arrest for criminal trespass for attending his graduation. Choi drove several hours and turned himself in at the Richardson Police Department.

243. Choi was transported to the Dallas County Jail and after 3 hours, he was released.

244. The Dallas County District Attorney's Office did not file an indictment or information against Choi. Given that more than two years have passed since Choi attended his graduation on May 15, 2024, the relevant two-year statute of limitations has expired, and therefore, the charges may no longer be pursued. *See* Texas Code of Criminal Procedure 12.02(a)(1).

245. Choi has not engaged in any political behavior or expression of protest since his second arrest. Any time he thinks to do so, he is immediately deterred by the fact that he was arrested not once, but twice, by his own university for exercising his First Amendment rights in support of Palestine.

**CAUSES OF ACTION**

**COUNT I**
**Excessive Force (42 U.S.C § 1983/Fourth Amendment)**

246. Plaintiff Chengyang Zhou realleges aforementioned facts and the policies and practices described above as applied to the Plaintiff, violate the Excessive Force 42 U.S.C §1983/Fourth Amendment.

247. Defendant Lieutenant Eric Willadsen, while acting under color of state law, used unreasonable and excessive force by choking Plaintiff Zhou.

248. At the time of the incident, the Plaintiff was not armed, resisting, or posing any threat.

249. This conduct constitutes an unreasonable use of force under ODOP's own policies, and by extension, the Fourth Amendment to the U.S Constitution.

250. A direct and proximate result of the Defendant Willadsen' actions, Plaintiff Zhou suffered physical injury, pain, emotional distress, and humiliation.

**COUNT II**
**Fourth Amendment Violation - Malicious Prosecution (42 U.S.C. § 1983)**

251. Plaintiffs reallege each allegation contained in this complaint.

252. The Fourth Amendment to the United States Constitution, enforceable against state actors through the Fourteenth Amendment, protects individuals from unreasonable seizures, including seizures effectuated through the abuse of legal process. A malicious prosecution that results in a seizure of the person pursuant to legal process constitutes an unreasonable seizure in violation of the Fourth Amendment.

253. Each individual Defendant, acting under color of state law, initiated, procured, and caused the commencement and continuation of criminal proceedings against Plaintiffs through investigative, administrative, and non-advocacy conduct. This claim challenges both the civil

disciplinary hearings and/or criminal charges filed against Plaintiffs as a continuous course of malicious conduct without probable cause with malice to intimidate and suppress Plaintiffs pro-Palestine speech and expression.

254. Acting together, Defendants wrongfully instituted legal process against Plaintiffs Zhou, Abusaad, Elseisy, Najjar, and Choi subjecting them to wrongful harassment by the police, wrongful arrest, wrongful prosecution, and wrongful incarceration and or detention in violation of the Fourth and Fourteenth Amendments to the United States Constitution. With malicious intent, the Defendants acted individually and collectively in pursuit of a common plan under color of law to deprive Plaintiffs of their constitutional rights.

255. The DA's office has dismissed the misdemeanor against Plaintiff Zhou "in the interest of justice" and refused to file the felony offense.

**COUNT III**
**Violation of Plaintiffs' Rights to Free Speech Under the First and Fourteenth Amendments**
**(42 U.S.C § 1983)**

256. Plaintiffs reallege each allegation contained in this complaint.

257. Plaintiffs pro-Palestine speech and assembly were speech and expression protected by the First and Fourteenth Amendments to the United States Constitution

258. At all times relevant to this complaint, it was clearly established that the First Amendment protects the right to engage in political speech.

259. At all times relevant to this complaint, it was clearly established law that the First Amendment protects the right to speak and assemble.

260. Defendants' conduct in retaliation for Plaintiffs' exercise of protected speech entitles Plaintiffs to compensatory damages.

261. Defendants' conduct in retaliation for Plaintiffs' exercise of protected speech was malicious, oppressive, and in reckless disregard of Plaintiffs clearly established First Amendment rights, entitling them to punitive damages.

**COUNT IV**
**Freedom of Speech and Assembly (Tex. Const. art I, §8 and §27)**

262. Plaintiffs reallege each allegation contained in this complaint.

263. Defendants violated the broad protections to speech and assembly afforded to Plaintiffs under the Texas Constitution.

264. Plaintiffs' "liberty to speak" and "write" their opinions was curtailed by Defendants and their right to "to assemble in a peaceable manner" and "apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance" were also violated.

**CONCLUSION**

WHEREFORE, Plaintiffs pray that this Court:

1. Declare that Defendants' violated Plaintiffs' constitutional rights;

2. Plaintiffs injuries were a foreseeable event;

3. Plaintiffs are entitled to recover all actual damages allowed by law;

4. Plaintiffs contends that each of the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiffs federally protected rights. Thus, Plaintiffs are entitled to punitive damages against the Defendants;

5. Award the Plaintiffs' attorney's fees and costs under 42 U.S.C. § 1988 and state law; and

6. Grant such other relief as the Court deems just, equitable and proper.

Respectfully submitted,

**Marwa Elbially, Esq.**
ELBIALLY LAW OFFICE, PLLC
704 East 15th Street
Plano, TX 75074
E: info@elbiallylaw.com
TX Bar No. 2409-0089